IN THE MATTER OF THE APPORTIONMENT OF THE RAILROAD SCHOOL TAX OF 1875 AND 1876, *in Caldwell County.*

**School Tax:** RAILROADS. The road-bed of a railroad is chiefly valuable as an entirety, and its subdivisions within the limits of a county, or a school district, are not to be treated as local property under the acts of 1875 for the assessment and distribution of railroad taxes. Acts 1875, p. 121, § 8; p. 129, § 12. The school taxes on such road-bed, apportioned to a county, are properly distributed to the school districts therein in the proportion that the number of school children in each district bears to the whole number in the county; and the act of 1875 providing for such distribution is not unconstitutional, as giving a portion of the taxes levied upon property in one district to another. *Wells v. City of Weston,* 22 Mo. 337, distinguished.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Crosby Johnson* for appellant.

*J. A. Holliday* for respondent.

HENRY, J.—The following are the agreed facts: The Hannibal & St. Joseph Railroad Company paid to the collector of Caldwell county the sum of $5,737.47 as and for the school taxes on the value of railroad property apportioned to Caldwell county for the years 1875 and 1876. There are in the county sixty-nine school districts. Through twelve of these districts the road runs; and there are fifty-seven districts through which the road does not run. Plaintiffs filed their motion asking that all the school tax be distributed to the districts through which the road runs. The county court overruled the motion, and distributed the whole tax to the districts in the county in the proportion that the number of school children in such districts bore to the whole number in the county. Plaintiffs appealed to the circuit court. That court, on a hearing of the cause, ordered the school tax to be distributed as follows: (1)

To the district in which the same are situated, all tax arising from lands, workshops, depots, etc., owned by railroad company. (2) To the districts through which said railroad runs, in proportion to their respective mileage, all tax arising on the valuation of the road-bed and railroad track apportioned to the county. (3) To all the districts in the county in the proportion that their school children severally bear to the whole number of school children in the county, all tax arising from all other property of the railroad company, except lands, workshops, depots, buildings and road-bed.

From this judgment an appeal has been prosecuted to this court. The transcript in the cause was lost or mislaid, and has recently been supplied, and we give the title of the cause, as it appears in the papers supplied. The distribution was made under the act of 1875. Section 8 of that act is as follows: "The board shall apportion the value of all lands, workshops, depots and other buildings belonging to or under the control of each railroad company, to the counties, municipal townships, cities or incorporated towns in which such lands, workshops, depots and other buildings are situate; and the aggregate value of all other property of each railroad company shall be apportioned to each county, municipal township, city or incorporated town, in which such road shall be located, according to the ratio which the number of miles of such road completed in such county, municipal township, city or incorporated town shall bear to the whole length of such railroad."

The road-bed is not land, within the meaning of the first clause of that section. The apportionment of railroad taxes to counties through which the road passes, is based upon aggregate values. The road-bed is chiefly valuable as an entirety. In no county is the tax apportioned in proportion to the value of that portion of the road-bed lying within the county. No means are provided for ascertaining it, nor is it anywhere in the section above copied, or in section 12 of the act of 1875, in relation to the distribu-

tion of the school tax, contemplated that the value of the road-bed in the respective counties shall be ascertained. Section 12 is as follows: "For the purpose of levying school taxes in the several counties on railroad property, the several county courts shall ascertain from the returns in the office of the clerk of the county court the average rate of taxation levied for school purposes by the several local school boards or authorities of the several school districts through which each railroad runs, and shall cause to be charged to the said railroad companies school taxes at said average rate on the proportionate value of said railroad property so certified to said clerk of the county court by the State Auditor under the provisions of this act. And the said county courts shall apportion the said taxes, so levied, to the respective school districts in the county in the proportion the number of children in each district bears to the whole number of children in said county; Provided, that in cases where townships, cities or towns have subscribed to such railroad for the purpose of constructing the same, and shall have issued their bonds, or paid their subscriptions, the school taxes arising from assessment of railroad property in such township, city or town shall be distributed to the school districts in such township, city or town in the proportion that the number of children of school age in such district bears to the number of school children in such township, city or town; And provided, that each and every school district shall be entitled to the school taxes, or an amount equal thereto out of the taxes from said railroad companies, on all lands, workshops, depots and other buildings, lying in their respective school districts as shown by the maps or plats on file in the office of the clerk of the county court." The distribution to the counties is in proportion to the number of miles of the road, within the respective counties. The road-bed within the county is not treated by these acts as local property.

It is contended that the act of 1875 is unconstitutional in that it gives a proportion of the taxes levied upon prop-

erty in one township, to others, and the case of *Wells v. City of Weston*, 22 Mo. 387, is cited as authority to sustain that view. It was held there that the legislature had no power to authorize the city of Weston to levy and collect a tax on property beyond its corporate limits. There is no analogy between that and this case. The county is a *quasi* corporation, divided for convenience into municipal townships under the jurisdiction of the county, and in the aggregate composing the county. If the legislature had authorized one county to levy and collect taxes upon property located in another, it would be an analogous case to that of the *City of Weston* above referred to.

If the act prescribing the mode of distributing the railroad school tax is unconstitutional, on the same ground, section 8 of the act 1875, *supra*, would be unconstitutional, for under that section a county receives taxes on the aggregate value of the property of the railroad company, wherever situated, without regard to the value of the property of the company located in the county. In *State v. Severance*, 55 Mo. 388, objection was made to that mode of apportioning the railroad tax, but the court observed that: "So far as the actual road-bed is concerned, it is not questioned that this is a sufficiently uniform and just manner of making the taxes." In *Washington Co. v. R. R. Co.*, 58 Mo. 376, Judge Lewis, for the court, said: "Thus one county may contain railroad property worth far more than that within another, and may yet receive a smaller apportionment for taxation by reason of having a less number of miles of road completed within its limits." In another part of the same opinion, he says: "The power (of the board) to increase or reduce is in like manner limited to the valuation of aggregates, and cannot be applied to divisible parts, whether by county boundaries or otherwise." If the taxes were levied upon the actual value of the road-bed in the county, disconnected from the road, as an entirety, but little revenue would be derived by the county

from this source, if fairly valued as a detached parcel of the road.

The State has full power to control the county revenue, and we see no objection to the mode which the legislature has seen proper to adopt for the distribution of the railroad school tax. *State v. County Court*, 34 Mo. 546; *School District v. Weber*, 75 Mo. 558; *State v. Holladay*, 70 Mo. 137.

The judgment of the circuit court is reversed and the cause remanded, with directions to that court to enter a judgment in accordance with the views herein expressed, which are in affirmance of the order made by the county court of Caldwell county. All concur.