THE STATE ex rel. BROWN, *Collector*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*.

1. **Railroad Property**: RATE OF TAXATION: STATUTE OF 1875. In levying taxes on railroad property, under the act of March 15, 1875 (Acts, p. 119), the same rate of taxation must be applied to it as to the general property of individuals.

2. ——: ——: CREDIT FOR TAXES PAID UNDER AN ILLEGAL LEVY. Where the levy by the county court on the property of the defendant, a railroad, was illegal, because the levy on the property owned by the defendant on the first day of August, 1875, was made at the rate which was levied on property owned by individuals on the first day of August, 1874, but the defendant paid the tax so illegally levied on its property, owned by it August 1, 1875, such payment should be allowed the defendant as a credit in an action against it under a new levy made on its property by the county court under the act of April 22, 1879. (Acts, p. 175).

3. **Taxes for Interest on Railroad Bonds, Levy of**: STATUTE. A county court cannot levy taxes to pay interest on railroad bonds, except in conformity to the provisions of Revised Statutes, section 6799.

4. **School Taxes**: LEVY FOR ON RAILROAD PROPERTY: STATUTE: CONSTITUTION. Revised Statutes, section 6880, regulating the levying of taxes on railroad property by ascertaining from the returns in the office of the county clerk, the average rate levied for school

purposes by the local boards, and charging to the railroad taxes at such average rate on the proportionate value of the railroad property certified to the clerk of the county court by the state, is constitutional, both as regards the state and federal constitutions.

5. **Constitution**: STATUTE. An act of the General Assembly will not be declared unconstitutional unless its unconstitutionality be first made to appear with clearness and certainty.

6. **The Question of an Omitted or Lost Year**, in the taxation of railroad property in this state, not decided, it not being embraced in any of the years for the taxes of which suit was brought.

*Appeal from Pettis Circuit Court.* — HON. JOHN P. STROTHER, Judge.

REVERSED.

*Thomas J. Portis* and *Thomas G. Portis* for appellant.

(1) Neither of the counts in the petition states facts sufficient to constitute a cause of action. Each shows that the property of defendant was regularly and legally assessed by the state board for each tax year, beginning with August 1, 1875, and ending August 1, 1878. (2) The county court of Pettis county had no power to make the orders relied upon in this suit levying these taxes a second time in 1879, and the statements and omissions in each of the counts of the petition show that such action of the county court was without authority, and void. The petition and the orders of court show that the court had made similar orders which are admitted to have been erroneous and illegal, and that said orders were again made in 1879, without stating that any notice thereof had been given the defendant, or that the latter was present and had an opportunity to be heard. (3) The act of April 22, 1879, makes no provision for notice to be given in such cases, and for that reason is in conflict both with the state and federal constitutions. *County, etc., v. Railroad*, 8 Am.

& Eng. Ry. Cases, 28; *Davison v. New Orleans*, 96 U. S. 104; *Stuart v. Palmer*, 74 N. Y. 188. (4) The petition is defective in not averring that acts required by section three of the act to be done by the state auditor, were ever done. (5) The act is in conflict with article 14, section 1, of the constitution of the United States, which provides that, "no state shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws." Cooley's Const. Lim. [3 Ed.] 351, *et seq.; Railroad v. Commissioners*, 16 Am. & Eng. Ry. Cases, 13; *Davison v. New Orleans*, 96 U. S. 104; *Stuart v. Palmer*, 74 N. Y. 188. (6) The instruction asked by defendant, in the nature of a demurrer to the evidence, should have been given. (7) The testimony shows that the assessments of defendant's property were made regularly and legally for each of the tax years sued for in this case, beginning with August 1, 1875, and ending August 1, 1879, and that more than enough money to cover all legal demands for taxes for each and all said years, was paid by defendant. (8) No part of the school taxes claimed and sued for in either of the counts in the petition in this case can be legally recovered, for the following, among other, reasons: (*a*) The law of this state, assuming to authorize what is called an "average rate," to be levied on railroad property alone, is not, and never was, a valid law. It is in conflict with several provisions of the constitution of Missouri, and also of the constitution of the United States, and must, therefore, be of no validity. *Livingston County v. Railroad*, 60 Mo. 516; Const., art. 10, sec. 11. (*b*) Even if an average rate was valid, the testimony and admissions in this case show that the average rates claimed in this case were not ascertained, correctly or legally. They show, beyond question, that the school district rates from which such pretended average rates were ascertained, were not themselves obtained in ac-

cordance with the very law which is claimed by plaintiff to have authorized the same. Laws 1874, p. 150, sec. 14; *Ibid*, p. 162, sec. 65 ; R. S., secs. 7050, 7125. (9) The state board of equalization made and fixed no assessment and apportionment to Mount Sterling township, the county court had no power or authority to make such, and there was no valuation upon which the items of "Mount Sterling Township Railroad tax," sued for in the first and third counts, could be legally levied. (10) The balance of road tax and school tax sued for in the fourth count, and found by the jury, are both illegal, and cannot be recovered. (11) The subscriptions made by Pettis county, and Mount Sterling township thereof, to the capital stock of the L. & St. L., and T. & N. railroads, and the bonds issued in payment thereof, were without authority of law, null and void, and were so declared by an order of the said county court of Pettis county, and the levy of the taxes claimed in this suit to pay interest on said bonds was unauthorized, and the manner in which the same were attempted to be levied was illegal and wrong, and the same cannot be legally enforced. (12) The taxes claimed and sued for in the first count were, at the instance of the plaintiff, fully tried and adjudicated by the Circuit Court of the United States for the Eastern District of Missouri, upon an intervening petition filed by plaintiff in the case of *Ketchum v. Railroad*, in 1876, and the said claim is *res adjudicata*, and no further recovery can now be had thereon. *State ex rel. v. Union Trust Co.*, 68 Mo. 463. This proceeding and judgment, and the satisfaction thereof, are pleaded in defendant's answer in this case as *res adjudicata* of the taxes sued for in the first count in the petition. 3 Cent. Law Jour. 725.

*George P. B. Jackson* for respondent.

(1) Properly the tax period is the fiscal year.

Taxes are imposed to defray the expenses of the government, and if the revenue is for a certain period, then the taxes should be regarded as being for the same period, for the taxes when collected become the revenue. The ownership of property is not the reason for taxation; the taxes are imposed upon the person, and property is only resorted to for the purpose of ascertaining the amount of the tax; the individual, and not the property, pays the tax. 1 Desty on Tax. 7–9; Cooley on Tax. 1–2. The fiscal period in this state is the calendar year. R. S., sec. 7563. Taxes for the support of the government are to be levied annually. R. S., secs. 6658 and 6663. Unless the taxes are for fiscal periods, i. e., the calendar year, there can be no approach to uniformity. The revenue law of 1872 only required biennial assessments of real estate, while personalty was to be assessed annually. Formerly the date of valuing property was September 1; by the law of 1872 it was changed to August 1, and by the act of 1881, it was changed to June 1. So, if the tax period began with the date fixed for valuing property, it has been changing and overlapping. (2) Railroad property has escaped taxation for one year. The first special law for the taxation of railroads was the act of March 10, 1871. Acts 1871, p. 56. The first assessment and levy of taxes, under this law, was in the year 1872, and at the end of that year, railroad and general property were equal, in point of time, as to the levy of taxes. Whether the tax period is the fiscal year, or any other period, the taxes levied in 1872 were, both as to railroad and general property, designated "taxes of 1872," and as such they had a definite meaning. *State ex rel. v. Union Trust Co.*, 68 Mo. 463. In 1873, general property was assessed, and upon it taxes were levied and paid, as "taxes of 1873." But, by the act of March 24, 1873, (Acts 1873, p. 63), the law of 1871 was repealed, the former board of equalization abolished, and a new one

created as to railroad property, which, by the terms of the new law, was to hold its first session on January 15, 1874, consequently there was, and could have been, no session of the board of equalization in 1873, and hence no assessment of railroad property in that year. No taxes were levied upon railroad property in that year, and none paid. So that railroad property entirely escaped taxation in 1873, and was then one year behind general property in the payment of taxes. By the act of March 10, 1874 (Acts 1874, p. 130), the board was directed to assess railroads in 1874, for the "taxes of 1873." The assessment was made as though the authority did not then exist to assess for the "taxes of 1874." See Proceedings of Board for 1874. The auditor certified the assessment to be for "taxes of 1873." The railroad company enjoined the levy and collection of these taxes, because of an alleged excessive and illegal assessment, but treated the taxes as of 1873. *Paul v. Railroad*, 4 Dill. 35; s. c., 3 Cent. Law Jour. 306. These taxes were finally compromised as "taxes of 1873." Thus, at the end of 1874, general property had been assessed and had paid the "taxes of 1874," while railroad property had only been assessed and had paid "taxes of 1873," thus leaving the latter still one year behind the former. The same method was pursued from year to year, until 1879, leaving railroad property one year, and one year's taxes, behind general property; the appellant never having been assessed, and never having paid the "taxes of 1878." In 1879, the "taxes of 1879" were levied upon both general and railroad property, and they were thus brought to an equality as to that year, but the "taxes of 1878" still remained unassessed and uncollected, as to railroad property. The act of April 22, 1879 (Acts 1879, p. 175; R. S., sec. 6879) authorized the levy of such omitted tax. (3) Conceding the various levies upon railroad property to have been erroneous and illegal, still they were re-

garded, by all the state and county officials, as levies for the taxes of the years prior to the years in which they were made. They were so considered by the railroad company when it litigated, compromised, or paid them, and the payments cannot now be diverted from the years for which they were, at the time, understood and intended to be made, and applied to any other years or taxes. This would be, in effect, recovering back taxes paid on an illegal assessment or levy, in order to use the amount for a different purpose; and this cannot be done, even though the railroad company had, at the time of payment, protested that the taxes were illegal. *Walker v. St. Louis*, 15 Mo. 563; *People v. Miner*, 46 Ill. 374; *Barrett v. City of Cambridge*, 10 Allen, 48. It was entirely competent for the taxpayer to settle the demand for taxes, although the levy was so utterly void that it could not have been enforced. The evidence leaves no room to question the character and purpose of the several payments. The minds of all concerned united in the understanding that taxes on railroad property were to be collected one year later than the same tax on general property. The payments being made on that common understanding, they must stand as they were made. This brings us to the plea in defendant's answer, that the "taxes of 1876" have been adjudicated. (4) The case of *Ketchum v. Railroad*, 4 Dill. 43, was disposed of by the master, and by the court, on the theory that taxes on railroad property were collected one year later than on general property; and, upon that theory, a judgment was rendered for "taxes of 1875," at the rates levied on general property, in and for 1875, except as reduced to the limits prescribed in the constitution. The adjudication did not touch the taxes of 1876, and does not affect this case, except that it is *res adjudicata* of just what the respondent claims, as to the "taxes of 1875," as levied in 1876. (5) In no sense can the petition be construed as combining two tax years, for the purpose of

creating a cause of action, or as a means to arrive at improper credits, which were allowed. (6) The point is now made for the first time, that there was no assessment made for Mt. Sterling township, in 1876. This objection will hardly be considered in the face of the record in this case. The petition distinctly alleges that there was such assessment, and the answer as distinctly admits it. It was again admitted in open court on the trial. (7) The taxes sued for in the first, second and third counts, were levied under authority of the act of April 22, 1879. This act, the appellant contends, was illegal, and in conflict with the constitutions of the United States and of this state. It was entirely competent for the legislature to provide the means for securing taxes from property, which was subject to, but which had escaped, taxation, and .that, even where the property is in the hands of a subsequent purchaser. Such laws have been sustained in many of the states. *Tallman v. Janesville*, 17 Wis. 71–7; *Cross v. Milwaukee*, 19 Wis. 509; *Tweed v. Metcalf*, 4 Mich. 579–590; *Brevoort v. Detroit*, 24 Mich. 322; *People v. Supervisors*, 26 Mich. 22; *State v. Newark*, 34 N. J. Law, 236; Cooley on Tax. 232; Cooley on Const. Lim. 255; Desty on Tax. 646; *State ex rel. v. Jefferson County Court*, 41 Mo. 583; *State ex rel. v. McGuire*, 52 Mo. 420; *State v. Railroad*, 77 Mo. 202; *City of Kansas v. Railroad*, 81 Mo. 285. That the act of 1879 does not provide for a special notice of the particular act of making a correct levy or extension of the tax, does not render it void. The appellant had notice, through the general statute, of the assessment of its property, and that was sufficient. Cooley on Tax. 266. It is not required that the taxpayer shall be notified of each ministerial, or *quasi*-legislative act, that may be necessary in the tedious process of collecting the revenue. This act does not have the effect to deprive the appellant of its property, without due process of law, nor to deny it the equal pro-

tection of the laws. The power of taxation is legislative. Cooley on Tax. 33; Desty on Tax. 81. And especially was the action, contemplated by the law of 1879, legislative in its character; and necessarily "due process of law," in that connection, does not mean, as contended by appellant, that "there must be a legal proceeding in a court of competent jurisdiction of the case, acting upon the proper legal process, upon established rules of practice, and administering valid laws." Such a rule would nullify every revenue law in the land. It is not required that the same methods shall be pursued in the taxation of the various classes of property; that would be impossible. If the same rate of tax is imposed upon all taxable property, according to its value, the end is accomplished, and although as many different methods be applied as there are different classes of property, yet it is all by "due process of law." *State ex rel. v. Severance*, 55 Mo. 378; *In re Apportionment of Taxes*, 78 Mo. 596. To require a taxpayer to bear his just proportion of the public burden does not "invade vested rights," even though some others might escape; but this law did not undertake to treat railroad property in a manner different from other property. Long before this act was passed, similar provisions existed in the revenue law, concerning general property. R. S., secs. 6709 and 6728. (8) The court below ruled against the respondent as to the school taxes for 1876 and 1877, sued for in the first and second counts, and there is no judgment for them. Appellant's purpose, in discussing the merits of those items, must, therefore, be to recover back what was paid on account of such taxes, but this cannot be done. *Walker v. St. Louis*, 15 Mo. 563; *People v. Miner*, 46 Ill. 374; *Barrett v. City of Cambridge*, 10 Allen, 48. Appellant urges several objections to the manner of levying school taxes on railroad property. These objections have all been substantially disposed of by this

court, and settled against the appellant. *State v. Holla-day*, 70 Mo. 137 ; *School District v. Weber*, 75 Mo. 558 ; *In re Apportionment of Taxes*, 78 Mo. 596 ; *School District v. Rhoads*, 81 Mo. 473. Even if there were irregularities in the levies for some of the school districts, still there could be a recovery for the portion which was valid. *State v. Allan*, 43 Ill. 456 ; *Allen v. Railroad*, 44 Ill. 85 ; *People v. Nichols*, 49 Ill. 517 ; *Mix v. People*, 72 Ill. 241 ; *Torray v. Millbury*, 21 Pick. 64 ; *State v. Dickerson*, 25 N. J. Law, 427 ; *State v. McClurg*, 27 N. J. Law, 253 ; *Walker v. St. Louis*, 15 Mo. 563. The stipulations determine what portion of the school taxes were valid, and show the correct rates. The instructions, on this branch of the case, submitted the matter of school taxes to the jury, in a plain and intelligible manner. (9) The objection of appellant to the balance of school taxes, sued for in the fourth count, is the same as that made to the other school taxes, and it must abide the ruling that may be made as to them. (10) Appellant objects to the items of taxes, in the several counts, to pay interest on bonds, because the conditions of the act of March 8, 1879, were not complied with. If this act had been intended to affect taxes previously assessed, it was repealed by the act of April 22, 1879 ( Acts, 1879, p. 175, sec. 3 ), so far as concerns the taxes contemplated in the latter act. But the act of March 8, 1879, was not intended to be retrospective. *State ex rel. v. Rainey*, 74 Mo. 229. If this law could have any retrospective effect, then it would arrest the taxes at any time before the final collection, and thus it would exempt, from certain taxes, all property upon which such taxes remained unpaid ; and in this aspect it would be violative of section 7 of article 10, of the constitution. Such intention to exempt from taxes is not expressed, and it will not be presumed. *Railroad v. Cass County*, 53 Mo. 27. Statutes *in pari materia* should be construed to stand together, if possible, and especially when passed at the

same session. *St. Louis v. Alexander*, 23 Mo. 507; *State v. Pitts*, 51 Mo. 133; *State ex rel. v. Clark*, 54 Mo. 216; *State ex rel. v. Heath*, 56 Mo. 231. The very essence of a new law is a rule for future cases, and resort should be had to the occasion of the law, and the remedy sought. *Dash v. VanKleeck*, 7 Johns. 486–502; *Grey v. Stoneham*, 1 Allen, 323; *State ex rel. v. Vernon County Court*, 53 Mo. 128; *Connor v. Railroad*, 59 Mo. 285; *State ex rel. v. Diveling*, 66 Mo. 375; *Quackenbush v. Danks*, 1 Denio, 130; *Clark v. Hall*, 19 Mich. 373; Cooley on Const. Lim. 370; Const. of Mo., art. 2, sec. 15. The county court had made the orders assessing and fixing these taxes long before the passage of this act, and that closed the matter. *Railroad v. Belvidere*, 35 N. J. L. 587; s. c., 5 Vroom, 193. (11) The appellant makes no distinction between the taxes to pay bonded indebtedness, sued for in the first count, and those sued for in the third count. The latter were taxes to pay interest on compromise bonds issued May 1, 1878, under authority of the act of April 12, 1877, which were clearly valid indebtedness, and the tax certainly legal. As to the former bonds, issued in 1869 and 1870, each issue had been adjudicated, and judgments rendered against the county. Those judgments were binding upon all taxpayers in the county. *State ex rel. v. Rainey*, 74 Mo. 229. Notwithstanding the conflict of opinion between this and the Federal courts, the debt must be paid; the only means of payment is through taxes, the collection of which this court should enforce for the reasons assigned in kindred cases. *State ex rel. v. Holliday*, 72 Mo. 499; *State ex rel. v. Rainey*, 74 Mo. 229. (12) The instructions given by the court fairly and distinctly submitted each issue of fact to the jury. They disclose, plainly and unmistakably, the theory upon which the court tried the case.

NORTON, C. J.—This suit was brought to recover an

alleged balance of taxes due from defendant for the years 1876, 1877, 1878, and 1879.   Plaintiff obtained judgment in the circuit court, from which defendant has appealed.

It appears from the record before us that the property of defendant, on the first day of August, 1875, was assessed in May, 1876, by the state board of equalization, in pursuance of section 7, acts 1875, page 120; that, after the completion of the work by the board, the state auditor certified its action to the clerk of the county court of Pettis county, setting forth the description, valuation, and location of all of defendant's railroad property in said county as assessed, equalized, and apportioned by said board to said county, and the various townships, cities, and incorporated towns therein, and the amount of taxes due the state upon such property in said county.   It further appears that the county court, in levying taxes upon the property thus assessed, and its value as ascertained by the state board, levied the rate of taxes which had been levied on general property owned by individuals on the first day of August, 1874, instead of the rate levied upon property owned by individuals on the first day of August, 1875.

This was an erroneous levy under the ruling of this court in the case of *State ex rel. Pettis Co. v. Union Trust Co.*, 68 Mo. 463, where it is held that the tax year extends from the first day of August in one year to the first day of August in the ensuing year; and that in levying taxes on railroad property the same rate must be applied to it as is applied to general property.

Under the revenue law, as it stood in 1875, it is made the duty of the county assessor, between the first day of August in each year, and the first day of January, to assess for taxation property owned by individuals on the first day of August of each year, and return his assessment to the county court by the twentieth of January, whose duty it is to meet in April thereafter

and equalize the valuation of the property, and, as soon as may be, fix and levy the rate of taxes thereon. The taxes thus levied are required to be paid by the thirty-first of December of the year in which they are levied, so that, as to individual property owned on the first day of August, 1875, and assessed for taxation, the tax, when imposed, is for the year 1876. While the county court of Pettis county pursued the law in levying taxes on individual property owned on the first day of August, 1875, it failed to do so in levying taxes on the railroad property owned by the defendant on the first day of August, 1875, but levied taxes thereon at the rate which it had levied on general property owned on the first day of August, 1874. Notwithstanding this illegal levy, defendant paid the tax thus imposed.

To correct the mistake thus made the county court, in 1879, by virtue of section 2, acts 1879, page 175, treated the levy thus made as a nullity, and levied upon the property owned by defendant the same rate which it had levied on property owned by individuals on the first day of August, 1875, thus making it the tax for 1876 ; and it is for an alleged balance of this tax due by defendant for which plaintiff sues in the first count of the petition.

It further appears that, on the assessment made by the state board in 1877, of the property owned by defendant on the first day of August, 1876, the county court, instead of levying the same rate of taxes which it had levied on individual property owned on the first day of August, 1876, levied the rate which had been levied on individual property owned on the first day of August, 1875. The taxes thus levied were paid by defendant and in the receipt given were designated as the taxes of 1876, when, under the ruling of this court in the case of *State ex rel. Pettis Co. v. Union Trust Co., supra,* if the proper rate had been levied, the tax should have been designated as the tax of 1877, and not that of 1876. In 1879 the county court, to correct the mistake, treated

said levy as a nullity and levied upon the property of defendant owned on the first day of August, 1876, the same rate of taxes which it had levied on property owned by individuals on the first day of August, 1876 ; and it is for the recovery of an alleged balance of their tax for which plaintiff sues in the second count of the petition.

It further appears that, on the assessment made by the state board of equalization in 1878, of the property owned by defendant on the first day of August, 1877, the county court levied thereon, for the taxes of 1878, the same rate which had been levied on other property for the year 1878 ; and it is for the whole of the taxes thus levied for which plaintiff sues in the third count of his petition.

It further appears that, on the assessment made by the state board in 1879, of the property of defendant owned on the first day of August, 1878, the county court levied a tax for the year 1879 ; and it is for an alleged balance due by defendant on this tax for which plaintiff sues in the fourth count of the petition.

It appears from the record before us that defendant paid taxes on the property owned by it on the first day of August, 1875, not at the rate imposed upon general property owned by individuals on the first day of August, 1875, but at the rate levied on property owned by individuals on the first day of August, 1874. While the tax paid by individuals on property owned by them on the first day of August was called, and properly called, the tax for 1876, the tax paid by defendant on property owned by it, on the first day of August, 1875, was improperly called the tax of 1875.

One of the controlling questions arising on this state of facts is, whether the tax paid by defendant on the improper levy made by the county court on the property owned by defendant the first day of August, 1875, should be applied as a credit on the tax levied by

the county court on defendant's property owned by it on the first of August, 1875, and which is sued for in the first count of plaintiff's petition. It is contended by defendant that it should be so applied, inasmuch as under the ruling of this court, in the case of *State ex rel. v. Union Trust Co.*, *supra*, the property owned by defendant on the first day of August, 1875, could only be taxed for the year 1876, at the same rates and terms that general property was taxed for said year.

It is clear, we think, that the assessment by the state board in 1876, of property owned by defendant on the first day of August, 1875, only authorized the county court under the existing laws to levy taxes thereon for the year 1876. Such is unquestionably the rule as to all property owned by individuals, the only difference being that in the one case the assessment and valuation of property is made by the county assessor, and in the other by the state board of equalization. In each class of cases it is only the property owned on the first day of August each year which is assessed and valued for taxation, upon which valuation taxes are to be levied and collected in the ensuing year.

All the confusion in this class of cases has arisen from the practice which prevailed in some of the counties of the state, previous to the decision in the case of *State ex rel. v. Union Trust Co.*, *supra*, in making a distinction as to the rate to be imposed on railroad property and other general property, and calling the tax imposed on railroad property the tax of one year, and that imposed on general or individual property the tax of another year. Inasmuch as a tax on defendant's property owned on the first day of August, 1875, as assessed by the state board in 1876, could only be legally imposed for taxes of 1876, and inasmuch as the tax levied in the first instance upon the valuation of said property was levied at the wrong rate, but, nevertheless, was paid by the defendant, the defendant is entitled to the benefit

of such payment by having it credited on the tax sued for in the first count of the petition. The tax so illegally levied and collected were taxes for the same period of time, the same tax year and the same revenue purposes as the taxes which were levied and collected from general or individual property for the same tax year, from August 1, 1875, to August 1, 1876, and ought not to be diverted to any other tax year.

What is here said with respect to the application of credits applies not only to the first count of the petition, but to all the counts. As the circuit court tried the case as to the application of credits for payment .of taxes levied at the wrong rate on proper assessments, on a theory in opposition to the one above indicated in this opinion, the judgment will be reversed.

It also appears that the county court, in 1879, in levying the taxes sued for in the first and third counts of the petition, levied certain taxes to pay interest on certain railroad bonds without having first complied with section 6799, Revised Statutes. In the case of *State ex rel. v. Railroad*, 87 Mo. 236, it is held that, inasmuch as such taxes as the above are not levied for current county expenditures, that such levy is void, unless made in pursuance of said section 6799.

It is claimed that the power of the county court to levy the taxes sued for in the first three counts of the petition is to be found in section 2, acts 1879, page 175, which, among other things, provides as follows : "And in case the county.court has failed or omitted, or may hereafter fail or omit, from any cause whatever, to levy the taxes or any portion of the taxes for any year or years, or in case the taxes or any portion of the taxes for any year or years shall have been illegally or erroneously levied, then said court, at the time of making the regular levy upon railroad property, as herein provided, shall, in addition thereto, ascertain and levy the taxes for state, county, municipal township, city, incorporated

town, and for school purposes, on the railroad and the property thereof in such county, municipal township, city, and incorporated town, which may have been or may hereafter be omitted, or illegally or erroneously levied upon the valuation of the railroads and property thereof, as returned by the state board of equalization for such year or years, at the same rates that were levied on other property for the year or years for which said taxes were omitted, or illegally or erroneously levied.''

Assuming this statute to be constitutional without discussing it, it is clear that before the power which it confers upon the county court can be called into exercise, it must appear that the court, for some year or years, had either omitted to levy any taxes, or had levied for some year or years illegally or erroneously. It appears in this case that on the valuation of defendant's property, owned on the first day of August, 1875, 1876, and 1877, respectively, that the county court did not omit to levy taxes, but did levy taxes thereon illegally or erroneously at the wrong rate, and hence one of the conditions calling into exercise the power which the. county court exercised in 1879, in levying taxes on the defendant's property, as assessed in the various years above mentioned.

But in exercising this power the court could only do so in the way and manner provided by sections 6798 and 6799, Revised Statutes. It is admitted that, as to the items of tax to pay interest on railroad bonds sued for in the first and third counts of the petition, that said section 6799 was not complied with, and under the ruling in the case of *State ex rel. v. Railroad, supra,* the levy of said taxes was a void levy, and no recovery can be had therefor and for that reason.

This construction does not give to the act in question, as counsel contend, a retroactive or retrospective operation, because all the former levies relating to defendant's property were erroneously made and were

treated as nullities, and whatever of validity is attached to the levy of taxes sued for is not founded on any order made by the county court levying a tax on defendant's property prior to 1879, but to the order making the levy for the first time in 1879.

The case of the *State ex rel. v. Rainey*, 74 Mo. 229, relied upon by plaintiff's counsel, only decides that section 6799 did not refer to taxes "which had been levied prior to the time the act was passed, and which were in process of collection." In the case before us the tax was not levied until after the passage of the act, and it is only because of the fact that no legal levy of taxes had been made prior to 1879, that the county court had any power to levy any taxes at all for the year mentioned in the petition.

It further appears that, in levying taxes for school purposes on defendant's property, that the mode pointed out by section 12, acts 1873, page 65, which corresponds to section 6880, Revised Statutes, was pursued. That section is as follows : "For the purpose of levying school taxes in the several counties on the roadbed, rolling stock, and movable property, of railroads in this state, the several county courts shall ascertain from the returns in the office of the clerk of the county court the average rate of taxation levied for school purposes by the several local school boards or authorities of the several school districts throughout the county. Such average rate shall be ascertained by adding together the local rates of the several school districts in the county, and dividing the sum thus obtained by the whole number of districts ; and shall cause to be charged to the said railroad companies school taxes at said average rate on the proportionate value of said railroad property so certified to the county court by the state auditor under the provisions of this article ; and the said clerk shall apportion the said school taxes so levied and collected

among all the school districts in this county in proportion to the enumeration returns of each district."

It is claimed by counsel that said section is violative of section 11, article 10, of the state constitution, and the fourteenth amendment to the constitution of the United States. Before we can be justified in declaring an act of the General Assembly unconstitutional its unconstitutionality must be made clearly and certainly to appear.

It is provided by said section 11, article 10, among other things, that "for school purposes the annual rate on property shall not exceed forty cents on the one hundred dollars valuation." The statute in question would only be violative of said section in the event of the average rate exceeding the limit prescribed in said section, and even in that case only to the extent of such excess. The first section of the fourteenth amendment to the constitution of the United States provides, among other things, as follows: "Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Wherein said section 12 of the act of 1873, *supra*, is in conflict with the above constitutional provision has not been made clear to us. It is certainly within the power of the legislature to authorize the imposition of taxes for school purposes on the property of defendant, and considering the nature of its property, and the fact, as stated in 78 Mo. 596, "that the roadbed is chiefly valuable as an entirety," that its aggregate value is made up because of its continuity, that the portion of a railroad in a county, when considered as disconnected with a continuous line, in most cases would be of little or no value, considering these things in connection with the further fact that the rolling stock of defendant, constituting a large and valuable part of its property, cannot be localized in any one county, it

being, from its very nature, constantly changing from one county to-day and another to-morrow, we cannot say that said section 12 is violative of the fourteenth amendment, inasmuch as under the construction we put upon it the average rate to be applied to defendant's property must not exceed the limit prescribed in the constitution.

In *In re Apportionment of Taxes*, 78 Mo. 596, it is held that said section 12, so far as it authorized the apportionment of school taxes levied and collected according to the mode therein prescribed, was constitutional. While the constitutionality of the section, as to the mode prescribed for levying school taxes, was not directly passed upon conclusively, that it is not obnoxious to the constitution follows as a corollary from what was decided.

It is also claimed that said section 12 of the act of 1873 was repealed by the act of 1875 (Acts 1875, p. 119). The act of 1875 is only amendatory of certain designated sections of the act of 1873, of which section 12 of the latter-named act is not one. This section is neither expressly repealed, nor is it repealed by necessary implication, inasmuch as there is no reconcilable conflict between said section 12 and the said act of 1875. The same legislature, at the same session, and within a few days after the approval of the said act of March 15, 1875, passed an act to amend said section 12 of the act of 1873, which is a legislative construction of the act of March 15, 1875, showing that it was not intended by said act to repeal section 12 of the act of 1873.

The question of an omitted or lost year in the taxation of railroad property is discussed in the briefs of counsel, but we only deem it necessary to say of it that if there is such a year it is not embraced in any of the years for the taxes of which plaintiff is suing.

Judgment reversed and cause remanded. All concur.