DEAL, *Appellant*, v. MISSISSIPPI COUNTY.

DIVISION TWO.

1. **Constitutionality of Statute:** PRESUMPTION. Every statute will be presumed to be constitutional till the contrary plainly appears, and it is only when it manifestly infringes some provision of the constitution that it can be declared void.

2. ———: BOUNTY FOR PLANTING TREES: R. S. 1879, SEC. 5697. Section 5697, Revised Statutes, 1879, providing for a bounty for planting, protecting and cultivating forest trees, to be paid by the county, is violative of section 47, of article 4, of the constitution, prohibiting any political corporation or subdivision of the state from loaning its credit or granting public money in aid of or to any individual, association or corporation.

3. ——— : ——— : ———. Said section 5697 is also in conflict with section 3, of article 10, of the constitution, declaring that taxes may be levied and collected for public purposes only.

Deal v. Mississippi Co.

4. ———— : REPEAL. Laws passed before the adoption of the consti-
tution of 1875, which were inconsistent with it, became inoperative
when it went into effect. (Schedule to Constitution, sec. 1.)

*Appeal from Madison Circuit Court.*—HON. J. D. FOX,
Judge.

AFFIRMED.

*E. J. Deal* for appellant.

(1) The law is constitutional; all laws are upheld
by courts, unless clearly repugnant to the constitution.
*State ex rel. v. Laughlin,* 75 Mo. 148; *State v. Able,* 65
Mo. 357; *Phillips v. Railroad,* 86 Mo. 540; *State v.
Hope,* 100 Mo. 347. This law was passed under the con-
stitution of 1865, not 1875. Bounties are given to
promote the public good, and the intention of the legis-
lature should not be defeated by the courts. The public
is benefited, as well as the individual recipient of the
bounty. We pay a bounty for wolf scalps; this is a
source of profit to the individuals killing the wolves,
and a source of security to the other citizens of the
state. So with the cultivation of forest trees: The
recipient of the bounty is benefited one way, and the
public is benefited by the safety of a valuable com-
modity, and the encouragement of other parties to
protect and cultivate groves of trees. (2) The time
for planting trees had not expired when the grove was
set out. R. S. 1879, sec. 5697; Session Acts, 1875, p. 97.

*J. J. Russell* with *Geo. S. Elliott,* Prosecuting
Attorney, for respondent.

(1) The law under which appellant seeks to
recover of the county is clearly repugnant to the spirit
and letter of the constitution. Const. 1875, art. 4,
secs. 47, 48. The spirit of the constitution under which
this law was enacted was to the same effect. Const. 1865,

art. 11, sec. 14. (2) But even if this act was constitutional when enacted, the constitution of 1875 being clearly repugnant to it, the same was thereby repealed. Schedule Const. 1875, sec. 1. (3) Even if said act was constitutional, the time had expired when parties could avail themselves of its benefits before appellant planted his trees. (4) The law was never intended for countries heavily timbered, with comparatively no native prairie lands. Laws are construed with reference to the object which prompted their enactment. *Spitler v. Young*, 63 Mo. 44.

THOMAS, J.—This cause originated in the county court of Mississippi county, Missouri, February 1888, by appellant filing demand for $404, as a third annual bounty for planting two hundred and two acres of forest trees, wherein appellant states, in substance, that in order to avail himself of the benefits of chapter 107, Revised Statutes, 1879, entitled "Of forest trees," about the month of February, 1882, and within ten years after the passage of an act of the legislature, entitled "An act to amend an act entitled an act to encourage the growth of forest trees," approved February 4, 1875, he planted and has ever since successfully grown and cultivated "forest trees," viz., catalpa trees in groves, on two hundred and two acres of prairie land owned by him in Mississippi county, Missouri.

The evidence tended to show that plaintiff set out, in 1882, two hundred and two acres of prairie land, belonging to him, in catalpa trees, and that he had fully complied with the provisions of the above-mentioned act which is as follows: "Sec. 5697: Every person planting one acre or more of prairie land within ten years after the passage of this act, with any kind of forest trees, except black locust, and successfully growing and cultivating the same for three years; and every person planting, protecting and cultivating, for three years, one quarter of a mile or more of forest trees upon

his own land, to be set not more than one rod apart and stand at the end of three years not more than two rods apart, shall be entitled to receive for fifteen years, commencing three years after said grove or line has been planted, an annual bounty of $2 per acre for each acre so planted, and $2 for each quarter of mile so planted, to be paid by the county. Said bounty shall not be paid any longer than said grove or line of trees is kept alive and in a growing condition.

"Sec. 5698. Any person wishing to avail himself of the provisions of the preceding section shall, within three years after planting said grove or line of trees, file with the clerk of the county court a correct plat of said grove or line of trees showing on what section said grove or line of trees is situated, attested by his own oath and the affidavit of at least two householders of the vicinity, setting forth all the facts in relation to the growth and cultivation of said grove or line of trees.

"Sec. 5699. The county clerk shall present said plat and affidavit before the county court, and if the court find from all the facts derived from the plat, affidavits and other sources, that section 5697 has been fully complied with, they shall issue a warrant on the county treasurer for the amount found due.

"Sec. 5700. Such certificates shall be received and taken by the collector of revenue of the county in which the same was given, for county taxes, and such collector shall be allowed credit to the amount of such certificate on behalf of the county."

The evidence tended to show further that the county court of Mississippi county paid plaintiff two installments under this act, of $404 each, in 1885 and 1886, but when he presented the demand involved in this suit in 1887, that court refused to audit and pay it, and hence this appeal.

I. The defendant county contends that the statute under which plaintiff claims this bounty is in direct conflict with section 47, article 4, of the constitution of

this state, which is as follows: "The general assembly shall have no power to authorize any county, city, town or township, or other political corporation or subdivision of the state now existing, or that may be hereafter established, to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

Every statute will be presumed to be constitutional till the contrary plainly appears, and it is only when it manifestly infringes some provision of the constitution that it can be declared void. *State v. Burgdoerfer*, 107 Mo. 1, and cases cited. But the statute in question so clearly and manifestly infringes the constitutional provision quoted above that we have no hesitancy in declaring it void. It seems to be too plain for argument. It is self-evident. This statute, it is true, was first enacted in 1870 and was, therefore, in force at the time of the adoption of the present constitution, in 1875, but by section 1, of the schedule to the constitution, it is declared that "the provisions of all laws which are inconsistent with this constitution shall cease upon its adoption."

II. This statute is in conflict also with section 3, article 10, of the constitution, which declares "that taxes may be levied and collected for *public* purposes only." It is not always easy to determine what a public purpose is, but here no difficulty arises. The land, on which plaintiff set out the catalpa trees, belonged to him, was his private property, and there is nothing in the statute to prevent him from collecting the bounty from the county, and then cutting the trees down and selling them for his private gain; and to take money, collected by taxation, from the people for such a purpose, cannot be tolerated for a moment, without a surrender of all property to the power of confiscation for private uses. That an enterprise may indirectly inure to the public benefit, is not the sole criterion by which

to determine a public purpose. Every improvement and every business enterprise benefits the public to some extent. "The general benefit to the community, resulting from every description of well-directed labor, is of the same character, whatever may be the branch of industry upon which it is expended. All useful laborers, no matter what the field of labor, serve the state by increasing the aggregate of its products—its wealth. * * * Our government is based upon equality of rights. All honest employments are honorable. The state cannot rightfully discriminate among occupations, for a discrimination in favor of one branch of industry is a discrimination adverse to all other branches. The state is equally to protect all, giving no undue advantages or special and exclusive preferences to any." *Opinion of Justices*, 58 Me. 593, *loc. cit.*

In *Loan Ass'n v. Topeka*, 21 Wall. 655, the city of Topeka, under a statute of Kansas, had issued its bonds for $100,000 as a donation to the "King Wrought Iron Bridge Manufacturing & Iron Works Company," to aid and encourage that company in establishing and operating bridge shops in said city. Justice MILLER, speaking for the supreme court of the United States, in reference to the power of the state to authorize the city to make this donation, said: "Of all the powers conferred upon government that of taxation is most liable to abuse. Given a purpose or object for which taxation may be lawfully used, and the extent of its exercise is in its very nature unlimited. It is true that express limitation on the amount of tax to be levied, or the things to be taxed, may be imposed by constitution or statute, but in most instances for which taxes are levied, as the support of government, the prosecution of war, the national defense, any limitation is unsafe. The entire resources of the people should, in some instances, be at the disposal of the government. The power to tax is, therefore, the strongest, the most pervading of

all the powers of the government, reaching directly or indirectly to all classes of the people.

It was said by Chief Justice MARSHALL, in the case of *McCulloch v. State of Maryland*, that "the power to tax is the power to destroy. * * * This power can as readily be employed against one class of individuals and in favor of another, so as to ruin the one class and give unlimited wealth and prosperity to the other, if there is no *implied limitation* of the uses for which the power may be exercised. To lay with one hand the power of government on the property of the citizen, and with the other to bestow it upon favored individuals, to aid private enterprises and build up private fortunes, is none the less a robbery, because it is done under the forms of law, and is called taxation. This is not legislation. It is a decree under legislative forms." And this donation was held to be for a purpose not public, and, therefore, void.

Justice APPLETON, in his opinion, 58 Me. 590, characterized taxation for private enterprises as taxation "to load the tables of the few with bounty, that the many may partake of the crumbs that fall therefrom." "Taxes are burdens or charges imposed by the legislature upon persons or property to raise money for *public purposes.*" Cooley, Con. Lim. 479. The true principle is stated by the supreme court of Pennsylvania in the case of *Sharpless v. Mayor*, 21 Penn. 168. The legislature has no "constitutional right to create a public debt or to lay a tax or to authorize any municipal corporation to do it, in order to raise funds for a mere *private purpose*. No such authority passed to the assembly by any grant of legislative power. This would not be legislation. Taxation is a mode of raising revenue for *public* purposes. When it is prostituted to objects in no way connected with the public interest or welfare, it ceases to be taxation and becomes plunder. Transferring money from the owners of it into the possession of those who have no title to it, though it be done

under the name and form of a tax, is unconstitutional for all the reasons which forbid the legislature to usurp any other power not granted."

The principle announced by these authorities is not founded on, or deduced from, positive, affirmative constitutional provisions, but on and from the limitation of the taxing power itself. Our constitution, therefore, on this subject, is simply declaratory of the common law and of general principles, well recognized and almost of universal application. The legislature of Missouri had no power to authorize county courts to raise money by taxation, to be appropriated to the planting of trees upon *private* property for *private* gain, no right to the trees or the use or control of the trees being reserved to the public.

We do not deem it necessary to answer the other questions presented by this record. The judgment is affirmed. All concur.