THE STATE ex rel. McCAFFERY et al. v. ALOE et al.

In Banc, December 5, 1899.

1. Demurrer: ADMISSIONS: CONCLUSIONS OF LAW. A demurrer does not confess conclusions of law.

2. ———: ———: PUBLIC LAW. A public law is not the property of any man, and can not be confessed to be unconstitutional by demurrers to pleadings.

3. ———: ———: STATUTE. The invalidity of a statute can not be predicated on an admission.

4. ———: ———: ———: PRESUMPTION. The presumption is that an act of the General Assembly is valid, and that presumption is to continue until its invalidity is shown beyond a doubt.

5. Fictitious Issues: PUBLIC OFFICE. Fictitious issues can not be made the basis of testing title to a public office by an equitable action.

State ex rel. v. Aloe.

6. **Title to Public Office**: INJUNCTION. A chancery court has no jurisdiction, by injunction or otherwise, to bar the entrance to a public office of an officer appointed thereto by the Governor, nor to determine his title thereto.

7. ————: ————: FORESTALLING EVENTS. A court of chancery can not by excursions beyond its domain produce conditions to make jurisdiction for itself by forestalling or anticipating events. It can not by injunction prohibit officers appointed by the Governor from taking possession of their office, when their title thereto may be tried in a court at law after they have secured possession.

8. **Equity Courts**: BILL QUIA TIMET. One can not go into a court of chancery to prevent events which he fears will be disastrous if left to a court of law ample to afford a complete remedy.

9. ————: POLITICAL RIGHTS. A chancery court has no power by injunction to protect political rights of private citizens.

10. **Public Office**: INJUNCTION: UNCONSTITUTIONAL LAW. A chancery court, has no jurisdiction, at the very threshold of a case, on the motion of one and the absence of the other party, to enjoin the defendant from taking possession and performing the duties of a public office to which he has been appointed, upon the mere allegation that the law under which he claims is unconstitutional, when there has been no adjudication to that effect.

11. ————: PROHIBITION. Prohibition is the proper remedy to prevent a court from assuming a jurisdiction it has not, or exceeding a jurisdiction it has.

12. ————: ————: DISSOLVING INJUNCTION. Where this court has held that a circuit court exceeded its equity powers in issuing an injunction, it does not exceed its own jurisdiction when it dissolves the injunction.

13. ————: ————: APPEAL. If relators in prohibition in this court have not an adequate remedy against the judgment of the circuit court against them, by a motion to dissolve the injunction and an appeal, this court will issue its writ of prohibition to the circuit court, and, if it finds that court has exceeded its jurisdiction in issuing the temporary writ, will dissolve it.

14. ————: ————: BAR. If there is anything in the circumstances suggesting that the party asking for a writ of prohibition to an inferior court has neglected to apply for relief that was reasonably available, it will be withheld. But the mere failure to apply to the inferior tribunal for relief does not justify a denial of the writ.

## *Prohibition.*

WRIT AWARDED.

EDWARD C. CROW, Attorney-General, SAM B. JEFFRIES, Assistant Attorney-General, and W. J. STONE for relators.

(1)   The authority for the institution of this suit of prohibition is found in the Constitution of the State and its statutory laws.   Constitution of Missouri, sec. 3, art. VI; Laws 1895, p. 95.   (2)   The object of the writ is to prevent an inferior tribunal from assuming jurisdiction of a matter with which it is not legally vested, or where having jurisdiction, it has exceeded its legitimate powers.   State ex rel. v. Lewis, 76 Mo. 370; High on Extr. Leg. Rem., sec. 789; State ex rel. v. Withrow, 133 Mo. 500;   Thomas v. Mead, 36 Mo. 233; People v. Whitney, 47 Cal. 584; Byler v. Wear, 135 Mo. 230.   The question here is not as to whether Judge Withrow exceeded his jurisdiction in the suit for injunction after having obtained authority to act, but that he was without jurisdiction to entertain the same and his assumption of authority thereover is without warrant of law.   (3)   The proceedings instituted by these defendants were premature.   Plaintiffs had not qualified under the law as a Board of Election Commissioners and there was no law in effect at the time by which they could qualify.   The act of June 19, 1899, did not become operative until the twenty-first day of August, several days after the institution of the suit.   Cozart v. Fleming, 31 S. E. Rep. 822; Veeder v. Baker, 83 N. Y. 156; Railroad v. Rice, 36 Kan. 593.   (4)   The suit of injunction shows on its face that it was instituted for the sole purpose of challenging the right of plaintiffs herein to the office of Board of Election Commissioners of the city of St. Louis.   Equity has no jurisdiction in such cases.   Parties in interest must resort to the legal remedy afforded.   *Quo warranto* is the only means.

State ex rel. v. Aloe.

by which this may be done.   It is strictly a legal remedy, and its jurisdiction should not be displaced by an equitable proceeding.    Fahy v. Johnston, 21 N. Y. App. 757; Forte v. Thompson, 49 Neb. 772; Secomb v. Wurster, 83 Fed. Rep. 856; Rower v. Schuylkill, 21 Pa. Co. Ct. Rep. 311; Cicero v. Cicero, 176 Ill. 9; Ewing v. Jefferson City, 72 Mo. 438; State v. McReynolds, 61 Mo. 233. (5) The constitutionality of an act of the Legislature under which an office is created must be contested by *quo warranto* against the incumbent.    People v. Reordeau, 73 Mich. 508; People v. Maynard, 15 Mich. 463; People v. Perkins, 73 Mich 303; Attorney-General v. Amos, 60 Mich. 372; People v. Briggs, 50 N. Y. 553; Smith v. McCarthy, 56 Pa. St. 359; Smith v. Myers, 109 Ind. 1;Kemp v. Ventulette, 58 Ga. 419.   (6)   The matters involved are of a political nature and the circuit court was not warranted in exercising its chancery powers in relation thereto.    In re Sawyer, 124 U. S. 200; Green v. Mills, 30 L. R. A. 90; Miss. v. Johnson, 4 Wall. 475; Ga. v. Stanton, 6 Wall. 50.    (7)    To assume jurisdiction to control the exercise of political powers, or to protect the purely political rights of individuals, would be to invade the domain of the other departments of government or of the courts of common law.    Fletcher v. Suttle, 151 Ill. 41; Sheridan v. Calvin, 78 Ill. 237; Dickey v. Reed, 78 Ill. 261; Harris v. Schryoick, 82 Ill. 119; Hardesty v. Taft, 23 Md. 513; Bevard v. Hoffman, 18 Md. 484; People v. Canal Board, 55 N. Y. 393.

GEORGE D. REYNOLDS, NOBLE & SHIELDS and MORTON JOURDAN for respondents.

(1)   The motion to strike out is to be treated as a demurrer, admitting the facts pleaded in the return, and relating back so as to present for consideration here the want of sufficiency in the petition for writ of prohibition.   Paxton v. Talmage, 87 Mo. 16; Laws 1895, p. 95;    (2)   The Supreme

Court is limited by the state Constitution to appellate juris-diction, save in specified cases. The attempted removal from the circuit court of the question of the unconstitutionality of the law of June 19, 1899, is not within the specified cases. The application of plaintiffs and prayer for preliminary order dissolving the preliminary injunction is an attempt to confer original jurisdiction in an injunction case on the Supreme Court, and is not in aid of its appellate jurisdiction. Consti-tution 1875, art. VI, sec. 2; Mastin v. Sloan, 98 Mo. 252; State ex rel. v. Klein, 116 Mo. 259; Lane v. Charless, 5 Mo. 285. (3) The petition for the writ of prohibition does not present facts sufficient to constitute a cause of action of the kind. Every fact must be shown in the petition to justify the issu-ance of the writ. It does not show a want of jurisdiction in any particular, and it does not show there was any illegality in the order or in the manner of proceeding on the order. Barnes v. Gottschalk, 3 Mo. App. 222. The want of jurisdic-tion must be pleaded and denied before the writ will issue. State ex rel. v. Laughlin, 9 Mo. App. 486; s. c. 73 Mo. 443. (4) That the circuit court was that of original jurisdiction is decided in the following cases: Spaulding v. Brady, 128 Mo. 656; State ex rel. v. Hughes, 104 Mo. 471; Copeland v. St. Joseph, 126 Mo. 417; State ex rel. v. Stratton, 136 Mo. 423; Ewing v. Hoblitzelle, 85 Mo. 68; State ex rel. v. Daw-son, 99 Mo. 216; State ex rel. v. Johnson, 132 Mo. 105; State ex rel. v. Moehlenkamp, 133 Mo. 134. If the court has juris-diction to entertain proceedings of the general class to which the case belongs, prohibition will not lie. State ex rel. v. Railroad, 100 Mo. 59. And that the court had such jurisdic-tion, see: Ex parte Due, 110 Ala. 491; American, Etc., Co. v. Lea, 56 Ark. 539; Fisher v. Superior Court, 98 Cal. 67; Sher-wood v. N. E. Knitting Co., 68 Conn. 543; Goldsmith v. Owen, 95 Ky. 420; Ex parte Ellyson, 20 Gratt. (Va.) 10; Ewing v. Hoblitzelle, 85 Mo. 68; Murnane v. St. Louis, 123 Mo. 479; State ex rel. v. Smith, 104 Mo. 419. (5) The legal

remedy is inadequate, since it can not act prospectively and prevent the threatened action. The interposition of equity under such circumstances is based upon the doctrine of *quia timet*, and the. necessity of preventing irreparable mischief. (a) Officers *de facto* may restrain those claiming to be officers *de jure*, from taking possession of a school house or interfering with mânagement of schools. High on Inj., secs. 1315, 1319 and 1327, citing Bradley v. Commissioners, 2 Humph. 428, and Brady v. Sweetland, 13 Kan. 41. (b) The appointment under an unconstitutional law may be prevented. Rathbone v. Wirth, 150 N. Y. 459. This proceeding was one to restrain appointment of police commissioners. (c) Also to prevent illegal expenditures of public funds; and taxpayers may bring the action. Mechem on Officers, secs. 996 and 994; Throop on Public Officers, sec. 852; State ex rel. v. Hughes, 104 Mo. 459. (d) The idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an officer who holds no office, and a public·office can only exist by force of law. Norton v. Shelby County, 118 U. S. loc. cit. 442; Mechem on Officers, sec. 326. (6) The petition for prohibition did not ask nor authorize the order dissolving the injunction issued by the circuit court. Laws 1895, p. 95. Prohibition is a preventive, and not a corrective remedy. State ex rel. v. Ross, 136 Mo. 259; U. S. v. Hoffman, 4 Wall. 158; State ex rel. v. Rombauer, 105 Mo. 103; State ex rel. v. Macklin, 104 Mo. 619, dissenting opinion of Black and Brace, JJ.; 19 Am. and Eng. Ency. of Law, pp. 263, 281. (7) The circuit court had jurisdiction of the parties and the subject-matter. (a) The parties plaintiff were legally entitled to institute the action in the circuit court of the city of St. Louis. As to individual taxpayers: Newmeyer v. Railroad, 52 Mo. 81; Matthews v. Cameron, 62 Mo. 504; Lynch v. Murphy, 119 Mo. 163; State ex rel. v. Mead, 71 Mo. 266; Dennison v. Kansas City, 95 Mo. 429; Ranney v. Bader, 67 Mo. 476; State ex rel. v.

Elkin, 130 Mo. 90; Rathbone v. Wirth, 150 N. Y. 459; Cope-
land v. St. Joseph, 126 Mo. 417; Mechem on Officers, 996;
Throop on Officers, 852.    As to prosecuting attorney:    State
ex rel. v. Field, 119 Mo. 599; State ex rel. v. Stratton, 136
Mo. 426; State ex rel. v. Hughes, 104 Mo. 471; State ex rel.
v. Saline County Court, 51 Mo. 350; State v. Callaway, 51
Mo. 395. (b) The State need not be a party. State, etc., v.
Hirzel, 137 Mo. 435; State, etc., v. Seay, 23 Mo. App. 623.
(8)   The circuit court was authorized by express statute and
an unbroken line of precedents to proceed to enforce its jur-
isdiction by a preliminary order of injunction against a threat-
ened legal wrong.    R. S. 1889, sec. 5510; 2 High on Inj.,
sec. 1327; State ex rel. v. Saline County Court, 51 Mo. 350;
Huntington v. Cast, 149 Ind. 255; Parsons v. Durand, 150
Ind. 204; Norton v. Shelby County, 118 U. S. 425; Hughlett
v. Hughes, 104 Mo. 471. (9) As to the order of injunction, or
any other question of jurisdiction or manner of enforcing that
jurisdiction, the defendants were bound to bring before the
circuit court that question by appropriate proceedings on their
part; and this could have been done.    Atty-Gen. v. Gill, 39
S. W. Rep. 276; State ex rel. v. Laughlin, 9 Mo. App. 486;
R. S. 1889, secs. 5505 and 5508.    (10)   There is no place
for interference by prohibition, unless it can be shown that the
manner of enforcement of the order made was so oppressively
illegal as to require this court to arrest its action.    (a)   There
is no averment to this effect in the petition for prohibition nor
any such ground set forth in the motion to strike out the
returns. (b) Where there is appeal allowable, there can be no
prohibition. State v. Wilder, 49 La. Ann. 1211; State v. Elkin,
130 Mo. 90; Wilson v. Berkstresser, 45 Mo. 283; Bowman's
Case, 67 Mo. 146; State ex rel. v. Fox, 85 Mo. 61; State ex rel.
v. Klein, 116 Mo. 259. (c) If the court had jurisdiction of the
subject-matter and of the parties, it can not be prohibited. Mas-
tin v. Sloan, 98 Mo. 252; State ex rel. v. Withrow, 108 Mo. 1;
State ex rel. v. Walls, 113 Mo. 423.

VALLIANT, J.—This is an original proceeding in this court, the object of which is to obtain a writ of prohibition directed to the circuit court of the city of St. Louis to forbid its entertaining jurisdiction of a certain suit particularly described in the petition of relators, the general nature of which may be thus stated: Louis B. Aloe and others, citizens and taxpayers residing in the city of St. Louis, filed their petition in the circuit court of the city of St. Louis, in the nature of a bill in equity, against these relators, and the individuals then composing the board of election commissioners of St. Louis, wherein they referred to the Act of the General Assembly of May 31, 1895 (Laws 1895, Extra Session, p. 5), creating boards of election commissioners for cities having over 100,000 inhabitants and prescribing their duties, and the several amendments to that act, and stated that three of the defendants in their petition named, to wit, McCaffery, Brady and Wurzburger, had been duly appointed, qualified, inducted into office and were the members composing the Board of Election Commissioners for the city of St. Louis, in possession of the office and all the property and appurtenances belonging to it, ballot boxes, booths, registration lists and books and all records of the office, all of which were the property of the city and of the value of $10,000; that their terms had not expired, no successors had been appointed, and they were the legal and actual incumbents of the office, and that the act of the General Assembly of 1895 above named, with the amendments mentioned, constituted the only law on that subject in the State, and that it was then in full force and effect in the city of St. Louis.

The petition then goes on to refer to the act of the General Assembly entitled "An act to provide for the registration of voters in cities now having or which hereafter may have 300,000 inhabitants or more; to provide for the creation of a

board of election commissioners, provide for its appointment and define its duties; to govern elections in such cities, defining offenses, and providing penalties therefor, and to prescribe rules and regulations governing registration and elections therein, and to repeal all acts or parts of acts in conflict or inconsistent herewith," approved June 19, 1899 (Laws 1899, p. 179), which the petition characterizes as a pretended act, and denounces as a violation of certain provisions of the Constitution of this State, and of the first section of the fourteenth amendment of the Constitution of the United States, specifying the particulars in which it is deemed to offend the organic law of the State and nation. Then the petition states that under the terms and provisions of the act last named, the Governor had signified to the Secretary of State that he had appointed these relators, McCaffery, Kingsland and Kobusch, to compose the board of election commissioners for the city of St. Louis, and that they were about to be commissioned as such, and about to qualify and enter into their offices and take possession of all the property, paraphernalia, records, etc., appertaining to the office, and threaten to commence to provide all the necessary and proper equipment for the registration of voters and the conduct of elections, and to perform all the duties imposed on them as such board of election commissioners by the Act, all which would be at the expense of the city as that act provides, and that McCaffery, Brady and Wurzburger, composing the old board, were about to surrender possession of their offices with all the property, books, records, etc., appertaining to the same to these new appointees as soon as they should qualify. The petition prayed the court to enjoin the new appointees from qualifying or taking possession of the offices, property, books, records, etc., or from discharging any of the duties appurtenant thereto, and to enjoin the members of the old board from surrendering the same to the new.

The petition was filed in the circuit court of the city of St. Louis on the sixteenth day of August, 1899, and assigned in due course to Division No. 3 of that court, presided over by the Honorable JAMES E. WITHROW, who on that day granted a temporary injunction as prayed for, which was duly served on the defendants named in that petition.

The Act of the General Assembly complained of in that petition, not having passed with an emergency clause, did not take effect until August 21, 1899, which was ninety days after the adjournment of the legislature. The injunction was issued, therefore, five days before the Act became a law.

The relators McCaffery, Kingsland and Kobusch, who were appointed by the Governor under the Act of 1899 to be election commissioners for the city of St. Louis, finding themselves barred out from the offices to which they were appointed and enjoined from attempting to obtain possession and from performing any of the duties of the offices and from claiming to be such officers, on August 21, 1899, caused this original suit to be instituted here, to arrest the proceedings of the circuit court in the suit above mentioned, and dissolve the temporary injunction therein granted. A rule to show cause why a writ of prohibition should not issue was made by judges of this court in vacation, directed to the judge of that court who granted the injunction, and to the plaintiffs in that suit, returnable October 11, 1899. The returns of the judge and the plaintiffs in that suit are to the effect that the circuit court is a court of general jurisdiction in law and equity, having jurisdiction in that kind of cases with power to issue injunctions, and that the Act of 1899 was unconstitutional, and therefore in the case made by the plaintiff's petition the court had authority to issue the injunction as it did, and in doing so did not transcend its jurisdiction, and for that reason, if the relators are aggrieved, they have a remedy by further proceedings in that court or by appeal on final judgment. The cause is

submitted for the judgment of this court on a motion of the relators to strike out those returns.

The pleadings and motions, with their recitals and exhibits, make a voluminous record, but their substance is contained in the foregoing statement. And the question involved may be briefly stated thus: Is it lawful for a chancery court, or a chancellor in vacation, upon the filing of the bill, at the very threshold of the case, on the motion of one and in the absence of the other party, to enjoin the defendant from asserting his right to, or taking possession and performing the duties of, a public office to which he has been regularly appointed, upon the mere suggestion that the statute under which he claims the office is unconstitutional, when there has been no adjudication to that effect?

Upon the oral argument it was contended that the relators' position in this court is such that the statute under which they claim is confessed to be unconstitutional. By this we understand the contention to be that the motion to strike out the return is to be treated as a demurrer confessing the facts pleaded. Whilst it is true that a demurrer confesses the facts well pleaded in a plea against which it is directed, yet it does not confess conclusions of law drawn from those facts, and even statements made as of facts designed to show the invalidity of a statute are not to be taken as true upon demurrer like other statements in a case. A public law is not the property of any man and can not be confessed away. When the judiciary undertakes to pass judgment on an act of the Legislature in the light of the Constitution, it exercises the highest function of government known under our free institutions. In such case, parties and counsel may aid the court in its search for truth, both as to facts and law, but the responsibility for its findings and conclusions is upon the court alone. There is nothing in the pleadings, briefs or arguments of counsel for the relators to indicate that they regard the law under which they claim, to be in violation of the Constitution; on the contrary, by the

very claim they make to the offices in question, they assert the validity of the law.

The petition in the circuit court on which the injunction issued undertakes to trace the Act of 1899 through the Legislature, from the introduction of the bill in the House of Representatives to its passage in the Senate and final approval by the Governor, and makes statements in regard to its progress to show that certain provisions of the Constitution directing the method of procedure by the General Assembly in passing a bill were ignored or violated, and chiefly for those reasons the act is charged to be unconstitutional, and it is the statements in regard to those matters, that the relators are supposed to confess by their motion to strike out. But this court as early as 1855 decided that a judgment of invalidity of a statute could not be predicated on an admission (State v. Rich, 20 Mo. 393), which ruling has been approved and followed in State v. York, 22 Mo. 462, State v. Wiley, 109 Mo. 439, Ex parte Renfrow, 112 Mo. 591, and State v. Searcy, 46 Mo. App. 421.

When the validity of a statute is drawn in question, the court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The General Assembly is presumed to have been as careful to observe the requirements of the Constitution in enacting the statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until invalidity is made to appear beyond a doubt. [State ex rel. v. Railroad, 48 Mo. 468; State ex rel. v. Laughlin, 75 Mo. 147; Phillips v. Railroad, 86 Mo. 540; State ex rel. v. Railroad, 92 Mo. 137; State ex rel. v. Pond, 93 Mo. 606; St. Joseph & Iowa Railroad Co. v. Shambaugh, 106 Mo. 557; Deal v. Miss. Co., 107 Mo. 464; State ex rel. v. Wofford, 121 Mo. 61; Edwards v. Lesueur, 132 Mo. 410.] But in the case at bar these presumptions seem to have been reversed by the circuit judge, the statute held *prima facie*

invalid, the will of the Legislature blocked before it could take effect, and the officers appointed forbidden to put themselves in position where they could as officers defend it.

What was the object, the main, if not the only purpose of the suit in the circuit court? The plaintiffs in their petition said they were citizens, property owners and taxpayers of the city of St. Louis, and that the defendants, if not enjoined, would, under the requirements of that statute, take possession of the personal property pertaining to the office of election commissioners, which belonged to the city, and would enter on the business of registration of the voters and preparation for elections, and incur expense in that behalf to be borne by the city, from which would result great and irreparable injury to the city. It is not suggested in the petition that the city is unable to defend itself from the threatened irreparable pecuniary loss, or that the city officials having its interests in charge are unwilling to do their duty. The plaintiffs do not say that they brought the suit to protect their own property from extra taxation that would result if Mr. Kingsland were suffered to take Mr. Brady's place and Mr. Kobusch that of Mr. Wurzburger. Having set out in the beginning of the petition with the statement that they were property owners and taxpayers, they leave it to be conjectured what that has to do with the case. It is perfectly plain from the whole petition that protection to their property or pecuniary interest was not even a secondary object in bringing the suit and that those statements were thrown in to give them, as it were, a color of right to bring the suit, and under that fictitious guise contest the title of the relators to a public office. Fictitious issues are now almost obsolete in actions at law, and were never favored in suits in equity.

The real and only purpose of the suit in the circuit court was to bar the entrance to the office of board of election commissioners by injunction, and to obtain a decree of a chancery court declaring relators' title to the office invalid. That is a subject over which a chancery court has no jurisdiction. The

courts of law are open to all persons who have rights of that nature which have been violated, and ample means are afforded in those courts for the vindication of such rights and the redress of their wrongs.    [High on Inj., sec. 312; In re Sawyer, 124 U. S. 200; Hunter v. Chandler, 45 Mo. 452; State ex rel. v. Vail, 53 Mo. 97; State ex rel. v. May, 106 Mo. 488.]

It is said in support of the injunction, that since no one was in possession of the office, there was no one against whom a writ of *quo warranto* could be directed.    But the petition in that case stated that these relators were about to enter into the office and would do so if unrestrained, as soon as the act of the legislature on its face should go into effect.    Whilst the main virtue of an injunction is to anticipate and prevent a threatened wrong which if committed a court of law could not adequately redress, yet a court of chancery can not in excursions beyond its domain produce conditions to make jurisdiction for itself by forestalling events which would if left alone have no more injurious effect than to land the case in a court of law, whose process is equal to the emergency.

The petition in the circuit court is aimed to be in the nature of a bill *quia timet*.    Under that head of equity jurisprudence one may go into a court of chancery to prevent the occurrence of events which he fears will be so disastrous that they will be beyond remedy in a court of law, but he can not do so merely because he fears that if events are left to take their course he will be forced to plead in a court of law ample to afford all the remedy the case demands.    According to their own statement, if these taxpayers had waited five days the conditions would have been such that the courts of law would have been wide open to them; and if the remedy should not be so speedy as an injunction issued on their *ex parte* hearing, it would at least have more the meritorious appearance of fairness and deliberation, and be not more inconvenient than the founders of the common law in their wisdom and experience

may be presumed to have anticipated when they assigned the trial of such cases to courts of law.

There is another aspect of that case that places it beyond the scope of the chancellor's view, and that is the character of the interests involved. In their petition the plaintiffs in that case say: "That for said last named defendants" (the relators here) "to pretend to register citizens as voters and to divide the city into election districts, will produce irreparable confusion and mischief, and it will result in leading many citizens to believe they are legally registered, when in fact and in law such will not be the case, and they will be thus deprived of their rights and privileges as voters and citizens." There is no disguise of purpose in that statement; the powers of the chancery court are there plainly invoked to protect by injunction purely political rights. No such jurisdiction has ever been conceded to a chancery court, either in the Federal or State judiciary. The political rights of a citizen are as sacred as are his rights to personal liberty and property, but he must go into a court of law for them. A court of equity is a one-man power, wielding the strong force of injunction, often issued at chambers and on an *ex parte* hearing. Neither in England nor America has this power been suffered to extend to political affairs.

The Supreme Court of Illinois have said: "We would not be understood as holding that political rights are not a matter of judicial solicitude and protection, and that the appropriate judicial tribunal will not, in proper cases, give them prompt and efficient protection, but we think they do not come within the proper cognizance of courts of equity.... Wherever the established distinctions between equitable and common law jurisdiction are observed, as they are in this State, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved. In all such cases the remedy, if there is one, must be sought in a court of law." [Fletcher v. Tuttle, 151 Ill. loc. cit. 53.]

The United States Circuit Court of Appeals for the Fourth District, per FULLER, J., says: "It is well settled that a court of chancery is conversant only with matters of property and the maintenance of civil rights. The court has no jurisdiction in matters of a political nature. . . . . . . To assume jurisdiction to control the exercise of political powers, or to protect the purely political rights of individuals, would be to invade the domain of the other departments of government or of the courts of common law. . . . . . . Nor will equity interfere by injunction to restrain persons from exercising the functions of public offices on the ground of the illegality of the law under which their appointments were made, but will leave that question to be determined by a legal forum." [Green v. Mills, 30 L. R. A. loc. cit. 94.]

The Supreme Court of the United States has gone further than this and further than we are willing to follow, saying in effect that the judiciary is altogether unable to afford redress for the violation of political rights by an unconstitutional act of Congress. This is the language of that court: "By the second section of the third article of the Constitution 'the judicial power extends to all cases, in law and equity, arising under the Constitution, the laws of the United States, etc.,' and as applicable to the case in hand, 'to controversies between a State and citizens of another State,' which controversies, under the Judiciary Act, may be brought, in the first instance, before this court in the exercise of its original jurisdiction, and we agree, that the bill filed, presents a case, which, if it be the subject of judicial cognizance, would, in form, come under a familiar head of equity jurisdiction, that is, jurisdiction to grant an injunction to restrain a party from a wrong or injury to the rights of another, where the danger, actual or threatened is irreparable, or the remedy at law inadequate. But, according to the course of proceeding under this head in equity, in order to entitle the party to the remedy, a case must be presented appropriate for the exercise of judicial power; the rights

in danger, as we have seen, must be rights of persons or prop-
erty, not merely political rights, which do not belong to the
jurisdiction of a court either in law or equity." [Georgia v.
Stanton, 6 Wall. loc. cit. 75, 76.] That being a suit in equity
really did not call for a decision concerning any other than
equity jurisdiction, and Chief Justice Chase, limited his con-
currence to the conclusion that in the particular case made in
the bill the court had no jurisdiction. In that case also an
effort was made in the bill to give it the appearance of a suit
to protect property interests, the public buildings and personal
property records etc., of the State. On that point the court
said: "But, it is apparent, that this reference to property and
statement concerning it, are only by way of showing one of
the grievances resulting from the threatened destruction of the
State, and in aggravation of it, not as a specific ground of
relief. This matter of property is neither stated as an inde-
pendent ground, nor is it noticed at all in the prayers for
relief. Indeed the case, as made in the bill, would have
stopped far short of the relief sought by the State, and its
main purpose and design given up, by restraining its remedial
effect, simply to the protection of the title and possession of
its property. Such relief would have called for a very differ-
ent bill from the one before us." [Ib. 77.]

In denying those plaintiffs the right to prosecute the suit
in question we do not deprive them of any right they have
under the fourteenth amendment to the United States Consti-
tution. Every State has the right to construct its judiciary
as it sees fit, and the people of this State have seen fit to ob-
serve the distinctions that existed of old between legal and
equitable jurisdiction, and it is not denying plaintiffs due
process of law nor equal protection of law, to tell them that
when they wish to contest the title of another to a public office,
or to vindicate their political rights, they must go into the law
courts, and not into those whose jurisdiction is peculiar and
limited, and not adapted to complaints of that kind.

It is perfectly plain that the circuit court had no jurisdiction of the case as made in the petition before it, and that it exceeded its jurisdiction when it issued the temporary injunction.

Prohibition is the proper remedy to prevent a court from assuming a jurisdiction it has not, or exceeding a jurisdiction it has.

The point is advanced by learned counsel that this court exceeded its jurisdiction in dissolving the injunction when it issued the order to show cause why the writ of prohibition should not issue.   After the circuit court and the parties were admonished to proceed no further in the case until this court could look into the matter, the maintenance of the injunction already issued would have been as unlawful as further procedure in the case.   The order dissolving the injunction was only necessary for the information of those concerned, so that there could be no doubt as to the effect of the rule to show cause.   Undoubtedly this court or the judges in vacation could, if conditions had seemed to call for it, have qualified the rule to show cause by expressly leaving the injunction in force until the further order or final judgment of this court.   But in the absence of such qualification the preliminary rule not only arrests further proceedings, but undoes what has been done.

It is also contended by learned counsel that relators had their remedy by motion to dissolve, and by appeal on final judgment.

Prohibition is an extraordinary remedy and will not lie where the party claiming it has adequate remedy by ordinary means.   But the ordinary means that will defeat the application for this extraordinary writ must be sufficient to afford the relief the case demands.   If the relators should await to follow the course pointed out by their adversaries, it would in all probability be a year before their appeal could be heard and decided, and it would be perhaps two years if the cause took

its regular course without advancements both in the trial and appellate courts. · In the meantime they are out of office, and the important public duties the law requires of them are left unperformed. The remedy would be entirely inadequate. [Havemeyer v. Superior Court, 84 Cal. loc. cit. 397.]

It is said by an eminent law writer that before the writ of prohibition should issue it ought to appear that the party applying for it has applied in vain to the inferior tribunal for relief (High on Ex. Rem., sec. 765), and that author cites in support of the proposition a decision of the Supreme Court of Arkansas which does so declare. [State ex rel. v. Williams, 48 Ark. 227.] But whilst we agree to that general rule, we do not apply it as the counsel who invoke it here insist. It is not a jurisdictional requirement, it is not essential like a motion for a new trial before appeal. The writ of prohibition does not issue *ex debito justitiae* but only in the discretion of the court. When the applicant has made out his *prima facie* case, bringing it within the technical requirements of the law, the question still remains for the court, does the real right and justice of the case call for this extraordinary remedy? In determining the question, if there is anything in the circumstances suggesting that the party has neglected to apply for relief that was reasonably available, the writ would be withheld, · at · least until such relief was sought. The Supreme. Court of California, in the case last cited, took this view of the· subject, and held that the failure to apply to the lower court to discharge the receiver did not justify a denial of the writ of prohibition. [Havemeyer v. Sup. Ct., *supra*, citing Mayor of London v. Cox, L. R. 2 H. L. 278-280]. The point is not presented in the briefs of the learned counsel accompanied with any suggestion on their part that an application to the circuit court would have availed, but they present it as a fixed bar to the relator's application for this writ. We do not so regard it.

The record shows that the Honorable Daniel D. Fisher,

one of the judges of the circuit court of the city of St. Louis named in relator's petition, has never had anything to do with the case in question, and has never assumed to exercise any jurisdiction over it; therefore this proceeding should be dismissed as to him. The motion to strike out the returns is sustained and the writ of prohibition, except as to Judge FISHER, is awarded as prayed.

All concur except SHERWOOD, J., absent.