U. S. Standard Voting Machine Co. and the Board of Supervisors of Winneshiek County, Iowa, Plaintiffs, v. A. N. Hobson, Judge, etc., Defendant.

**Certiorari:** REVIEW OF INJUNCTIONAL ORDER. An appeal from an injunctional order restraining the use of voting machines is not such a plain, speedy and adequate remedy as will preclude resort to a proceeding by *certiorari* to test the validity of the order on the ground that it is in excess of jurisdiction, especially where it is apparent that the appeal could not be determined prior to the election at which the machines were to be used.

**Voting machines:** INJUNCTION. The use of voting machines at elections relates to the exercise of a purely political right with which courts of equity have no power to interfere by injunctions.

**Same:** CONSTITUTIONALITY. The statutes authorizing the use of voting machines are not in violation of the constitution which declares that "all elections by the people shall be by ballot," nor does the recent biennial elections amendment, or the statute removing the circle from the ballot, affect the right to use the machine previously approved.

Wednesday, October 24, 1906.

This is a proceeding by *certiorari* to annul that portion of an order entered by the defendant as judge of the Thirteenth judicial district holding the district court in and for Winneshiek county, granting a temporary injunction at the suit of one H. C. Hjerleid, plaintiff, in an action brought in equity against Winneshiek county, the board of supervisors, and the auditor of said county, and the United States Standard Voting Machine Company, as defendants, by which the defendants in that action (except the voting

machine company, which had not at that time been served with notice) were enjoined and restrained from the use at the election of November, 1906, in said county, of voting machines, sold or contracted to be sold or furnished to said county by the voting machine company. The other portion of the restraining order, of which no complaint is made in this proceeding, enjoined and restrained the same defendants from paying for said machines either in cash, warrants, or bonds, or in any other manner, or from issuing warrants, orders, or bonds in payment therefor.

The allegations of the petition in the injunction suit, so far as material to the determination of the question whether the portion of the restraining order complained of was proper, were, in brief (as appears by the return made by the defendant in this proceeding to the writ of *certiorari* issued from this court), that plaintiff, Hjerleid, was a resident, voter, and taxpayer of Winneshiek county; that on or about the 8th day of June, 1906, the defendant the United States Standard Voting Machine Company presented to the defendant board of supervisors its written proposal to sell on trial to the defendant county certain voting machines, to be used at the November, 1906, election; that said proposal was accepted and adopted by the defendant board of supervisors; that subsequently a certain agreement in the nature of a contract between the voting machine company and the defendant county was approved by the defendant board of supervisors and signed by the chairman thereof under the authority of the said board; that, in securing the adoption of the written proposal and the contract above referred to, certain representations were made by the voting machine company which were false and fraudulent, in that the contract was not, as understood by the board of supervisors, an embodiment of the written proposal, but amounted to an absolute barter and sale contract with a guaranty, and not a conditional contract as intended by said board, and that the board of supervisors never passed any other resolution

or adopted any other contract than that authorizing the use of United States Standard voting machines on trial at the November, 1906, election in said county; that the alleged contract above referred to was absolutely void, for the reason that there is no law authorizing the use at elections in Iowa of voting machines, and that title 6, chapter 3a, of the Code of Iowa (Supplement of 1902), is unconstitutional; that the commissioners appointed under and by virtue of the authority conferred by section 1137c of chapter 3a, title 6, of the Code of Iowa (Supplement of 1902), has not approved said machines since the enactment of the constitutional amendment relating to biennial elections, nor since the acts of the Thirty-first General Assembly of Iowa in relation thereto, and that such approval was necessary to authorize the defendant board of supervisors to enter into any contract for the purchase of such machines; that section 1137e of said chapter 3a, relating to the use of voting machines, and providing that one ballot may be placed in each party column or row containing only the words " Presidential Electors," preceded by the party name, and that a vote for such ballot shall operate as a vote for all the candidates of such party for presidential electors, is unconstitutional and violative of the constitutional amendment with reference to biennial elections, in not affording to the individual voter an opportunity to pass personal choice upon each and every candidate for office; that the voting machines referred to in the proposal and contract were inadequate and their use illegal, and not in conformity with the requirements of the laws of the Thirty-first General Assembly with reference to elections, inasmuch as their construction permitted the use of so-called party levers, which substantially nullified the effect and purpose of the statute removing the circle from the official ballot; that plaintiff was a duly qualified voter, and the use of said machine for voting purposes was not a vote or voting by ballot, and that their said use at said election would be unconstitutional and would nullify

such election, causing great expense and trouble to the people of said county, including the plaintiff; and that by the terms of the contract above referred to it was provided that the defendant county would at its meeting in November, 1906, pay to the defendant the voting machine company for said machines the sum of $17,550, and that, unless restrained by injunction, the defendant voting machine company would deliver to defendant county the said twenty-seven voting machines, and the said county would, in pursuance of said contract, accept said machines and pay to the defendant voting machine company the purchase price thereof, and the property of the plaintiff and of the other taxpayers throughout said county would be taxed to raise funds for the payment of said sum, and, unless restrained, the said machines would be used at said November election, making it impossible thereafter to replace the parties defendant in *statu quo,* and plaintiff would be remediless at law to recover his loss or protect his said rights, and that plaintiff had no plain, speedy, and adequate remedy at law.

*Read & Read, J. K. Macomber,* and *Frank Keiper,* for plaintiffs.

*N. Willett, E. R. Acres,* and *C. M. Houck,* for defendant.

PER CURIAM.— In a motion submitted with the case, the defendant asks that the petition for a writ of *certiorari* be dismissed, and the writ be quashed; but in the main the grounds urged in the motion are such as may be considered in passing upon the merits of the case, involving the legality of defendant's action in making the portion of the order which restrains the county of Winneshiek and its board of supervisors and auditor from using the voting machines referred to in the action of the board at the November election. It is urged, however, that the plaintiffs in this action, having

subsequently appeared in the injunction suit as defendants, filed an answer therein, and otherwise raised issues of law and fact, have a plain, speedy, and adequate remedy by appeal. With reference to the filing of the subsequent pleadings in the injunction suit, to which reference is made in the motion to dismiss the petition and quash the writ, it is sufficient to say that, whatever may have been the effect of such action on the part of the defendants in the injunction suit, the facts do not appear by the return, nor in any other manner, such as would enable us to take notice of them, and therefore they need not be considered. But, even if they were to be considered, we cannot see that they would affect the present proceedings, for the injunction suit was still pending, and the portion of the order restraining the county and its board of supervisors and auditor from carrying out the contract with the voting machine company, by accepting the machines and paying therefor under the terms of the alleged contract, was still in force. The voting machine company was still in court for a proper purpose, regardless of the validity of that portion of the restraining order questioned in this proceeding.

As to the ground of the motion involving the claim that the plaintiffs cannot maintain this *certiorari* proceeding, because they have a plain, speedy, and adequate remedy by

1. CERTIORARI: review of injunctional order.

appeal from the order granting the temporary injunction, it is enough to say, briefly, that in our judgment the right to appeal does not preclude plaintiffs from questioning the validity of the portion of the order complained of, on the ground that it was made in excess of jurisdiction and is therefore void and should be annulled. It is provided in Code, section 4154, that: " The writ of *certiorari* may be granted when authorized by law, and in all cases where an inferior tribunal, board or officer exercising judicial functions is alleged to have exceeded its proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy and adequate

remedy." It is contended in behalf of plaintiff that " other plain, speedy and adequate remedy " is only a limitation of the power to issue the writ where the tribunal exercising judicial functions is alleged to be " otherwise acting illegally," and that it has no application to a case where an inferior tribunal is alleged to " have exceeded its proper jurisdiction." But we think that the correctness of this view need not be passed upon, in view of our conclusion that the remedy by appeal is not such plain, speedy, and adequate remedy as to preclude the right to test the validity of the order in question, as against the complaint that it was made without jurisdiction. Of course, the right of *certiorari* is not available to correct mere irregularities or errors in the proceedings of the lower court. It may be that illegality of action, where the court has jurisdiction may sometimes be tested by *certiorari,* and, in such a case, the want of a plain, speedy, and adequate remedy by appeal may be important. But, where the action complained of is in excess of the jurisdiction of the court, it is doubtful whether the remedy by appeal is ever plain, speedy, and adequate. Certainly, in this case an appeal would neither have been speedy nor adequate, for it would have postponed any test of the validity of the order prohibiting the use of voting machines at the November election of this year until long after the election had been held. In a case involving an injunction to test the title to an office, when the term of office would probably expire before the appeal could be heard and decided, this pertinent language was used in *State ex rel. McCaffrey v. Aloe,* 152 Mo. 466 (54 S. W. 494, 47 L. R. A. 393), with reference to a writ of prohibition, serving the same purpose, as we understand it, that is served by the writ of *certiorari* under our procedure:

It is also contended by learned counsel that relators had their remedy by motion to dissolve, and by appeal on final judgment. Prohibition is an extraordinary remedy, and will not lie where a party claiming it has adequate

remedy by ordinary means. But the ordinary means that will defeat the application for this extraordinary writ must be sufficient to afford the relief the case demands. If the relators should await to follow the course pointed out by their adversaries, it would, in all probability, be a year before their appeal could be heard and decided, and it would be perhaps two years, if the cause took its regular course without advancement, both in the trial and appellate courts.

In our own cases, we find nothing to indicate that an appeal is a speedy and adequate remedy, where the question is as to want of jurisdiction to make the order complained of. Indeed, it is a justifiable inference, from those cases where the question of the adequacy of the remedy by appeal has been considered, that such remedy would not preclude resort to *certiorari,* if the jurisdiction of the subject-matter were the question involved. See *State v. Schmidtz,* 65 Iowa, 566; *Abney v. Clark,* 87 Iowa, 727; *Callanan v. Lewis,* 79 Iowa, 452. We are clear that, in this case at least, the remedy by appeal, to which plaintiff might have resorted, was not such a speedy and adequate remedy as to preclude his resort to this proceeding by *certiorari.*

On the merits of the case, as made by the return to the writ, the position strongly relied upon for plaintiff is that the lower court had no power or authority, under the 2. VOTING MACHINES: injunction. allegations of the petition for injunction, to interfere with the use of voting machines at the November election, 1906, as provided for by the board of supervisors. And to this broad proposition we shall now direct our attention, without attempting to follow the course of argument mapped out by counsel on either side. The right to vote is a political, and not a civil, right, and a court of equity will not exercise its extraordinary power of injunction to protect a mere political right as distinct from a civil right. The plaintiff in the injunction case, as a taxpayer, could no doubt have relief by injunction to prevent the board of supervisors and the county auditor, defendants in that action, from attempting to carry out a contract which

would impose an unlawful indebtedness upon the county; but, as a taxpayer, he had no interest in the question whether or not the November election in the county should be held by means of voting machines, and, as a voter, he had no interest in the method of conducting the election which would entitle him to control that method by the assistance of a court of equity. Some remedy at law he would, no doubt, have, if his right to vote were interfered with; but a court of law would not give him relief as against a mere anticipated wrong. It is to be noticed that the want of jurisdiction of the lower court to grant relief in equity was not on account of the want of right of the plaintiff in the injunction suit to maintain the action, but on account of the absence of any equitable right to relief on the part of any one, and therefore the want of jurisdiction did not grow out of the incapacity of the particular plaintiff, but out of the incapacity of any plaintiff, to have such remedy. Therefore the question is not as to the capacity of the plaintiff to sue, but the power of the court to give the attempted relief.

That courts of equity cannot interfere by injunction to protect a claimed political right is too well settled to require extended discussion. A few references to illustrations found in adjudicated cases will show the reasonableness and propriety of this rule. In *Fletcher v. Tuttle,* 151 Ill. 41 (37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220), the question was as to the jurisdiction of a court of equity to grant an injunction to prevent the giving of election notices, or the certifying of nominees for districts created by an apportionment act which was claimed to be unconstitutional, and the court holding that an injunction could not be granted for the protection of a political, as distinguished from a civil or property, right, used this language: " The complainant is a legal voter and a candidate for a particular elective office, and by his bill he is seeking the protection and enforcement of his right to cast his own ballot in a legal and effective manner, and also his right to be such candi-

date, to have the election called and held under the provisions of a valid law, and to have his name printed upon the ballots to be used at such election, so that he may be voted for in a legal manner.   The rights thus asserted are all purely political, nor, so far as this question is concerned, is the matter aided in the least by the attempt made by the complainant . . . to litigate on behalf of other voters, or of the people of the State generally.   The claims thus attempted to be set up are all of the same nature and are none the less political."   And, further, the court says:   " The extraordinary jurisdiction of courts of chancery cannot therefore be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for or to be elected to any office; nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held.   These matters involve in themselves no property rights, but appertain solely to the political administration of government.   If a public officer charged with political administration has disobeyed, or threatens to disobey, the mandate of the law, whether in respect to calling or conducting an election, or otherwise, the party injured or threatened with injury in his political rights is not without remedy, but his remedy must be sought in a court of law, and not in a court of chancery."

In the case of *State ex rel. McCaffrey v. Aloe,* 152 Mo. 466 (54 S. W. 494, 47 L. R. A. 393), already referred to, involving the right of a court of equity to enjoin the entrance of a person to office and to declare his title invalid, this language is used:   " The real and only purpose of the suit in the circuit court was to bar the entrance to the office of the board of election commissioners by injunction, and to obtain a decree of a chancery court, declaring relator's title to the office invalid.   This is a subject over which a chancery court has no jurisdiction.   The courts of law are open to all per-

sons who have rights of that nature which have been violated, and ample means are afforded in those courts for the vindication of such rights and the redress of their wrongs." And, after saying that the powers of a court of chancery cannot be invoked to protect by injunction purely political rights, the court continues: "No such jurisdiction has ever been conceded to a chancery court, either in a federal or state judiciary. The political rights of a citizen are as sacred as are his rights to personal liberty or property, but he must go to a court of law for them. A court of equity is a one-man power, wielding the strong force of injunction, often issued at chambers, and on an *ex parte* hearing. Neither in England nor America has this power been suffered to extend to political affairs." Without further quotation, it will be sufficient to cite the following additional cases supporting the general proposition that a court of equity cannot interfere by injunction, to protect political rights: *Georgia v. Stanton,* 73 U. S. (6 Wall.) 50 (18 L. Ed. 721). *In re Sawyer,* 124 U. S. 200 (8 Sup. Ct. 482, 31 L. Ed. 402); *Shoemaker v. Des Moines,* 129 Iowa, 244.

The conclusion is inevitable that, so far as the order of the lower court restrains the use of voting machines authorized by the board of supervisors to be used at the November election, it is beyond the jurisdiction and power of the court to make, and is void.

But by way of illustrating the kind of questions which a court of equity would be compelled to pass upon and made determinative of the method of conducting elections, if the power which the lower court has attempted to exercise were held to be within its jurisdiction, we may refer to a few of the most important grounds presented to the lower court for granting a preliminary injunction. It is urged that the statute (Code Supp. 1902, sections 1137a-1137u) authorizing the use of voting machines is unconstitutional because of the provision in the State Constitution (article 2, section 6) that: "All elections by the

3. SAME: constitutionality.

people shall be by ballot." In other words, the lower court was asked to interfere with a policy of the State declared by the Legislature, unquestioned for six years, and in accordance with which elections have already been held in some of the counties and will doubtless be held in many more, whatever the result of the determination of the lower court on final hearing may be; for the action of that court, can only be binding on parties to the suit, and the State of Iowa, under whose authority the county of Winneshiek acted in adopting voting machines, is not, and cannot be, a party to that suit or any other, for the determination of the question. If such power exists in a court of equity, then the method of conducting elections provided for under this or any other law may be interferred with and set aside. It has been held, however, that voting by such a machine is voting by ballot. *City of Detroit v. Board of Inspectors of Election,* 139 Mich. 548 (102 N. W. 1029, 69 L. R. A. 184); *Lynch v. Malley,* 215 Ill. 574 (74 N. E. 723). Without elaborating the discussion, it is enough to say that the constitutional provision was intended to require and protect the secrecy of the ballot with the general purpose of guarding against intimidation, securing freedom in the exercise of the elective franchise, and reducing to a minimum the incentives to bribery. *Ex parte Arnold,* 128 Mo. 260 (30 S. W. 768, 33 L. R. A. 386, 49 Am. St. Rep. 559; and see cases referred to in those above cited. In no case, so far as we can discover, has the use of a voting machine been held unconstitutional. In Massachusetts the Supreme Court divided on the question whether a vote cast by means of such machine was a " written vote," within the language of the Constitution of that State, and three judges held that it was. Under the Constitution of Rhode Island requiring voting by ballot, it was held that a provision for voting machines was constitutional; the court saying: " The primary meaning of ' ballot,' which signified a little ball, was not the one intended, but the broader meaning which has been substituted for the word by reason of the

change in the mode of voting from little balls to that of paper vote." We see no merit in the contention that the provision for use of voting machines is unconstitutional, and that an election in that method would be invalid.

It is urged by counsel that the machine adopted by the board of supervisors has not been approved by the commissioners provided for in Code Supp. 1902, sections 1137c, 1137d. But they admit that the commissioners did approve of this very machine; the real claim now made being that such approval was prior to the recent constitutional amendment providing for biennial elections, and prior to the enactment of the recent statute striking the circle from the Australian ballot. The biennial election amendment makes no change in the method of conducting elections, and the statute referred to does not amend or repeal the provisions as to the use of voting machines. We see no reason for saying that a vote cast by means of an authorized machine will not be as valid and effectual as one cast by Australian ballot in accordance with the latest statute on the subject.

It is claimed that the machine adopted has not sufficient capacity for the number of candidates to be voted for in 1908, when presidential electors must be chosen; but this suit relates to the election of 1906, and the lower court was not called upon to determine the sufficiency of the machine for 1908. So far as the validity of the order preventing the use of the machine at the coming election is involved, it is wholly unnecessary to discuss the validity of the contract between the county and the voting machine company. That is left for determination in the lower court. The use of the machine under the adoption thereof by the board of supervisors for trial (the validity of which is not questioned) cannot possibly fasten upon the county any contract which the board of supervisors had no authority to make, or did not in fact make.

In conclusion, we need only reaffirm the proposition already announced, that the lower court had no power or ju-

risdiction to interfere with the use at the coming election in Winneshick county of voting machines duly authorized to be used. And especially should there be no such interference where the plain purpose of the suit is not to secure a valid election, but to determine contract rights as between the county and a voting machine company, which rights can be fully adjusted in proper proceedings without prohibiting the conducting of a public election by methods authorized by law.

The part of the order of the lower court brought before us for review is therefore *annulled.*