JOHN H. BRADLEY, Contestant, v.   ARGUS   COX, Contestee.

In Banc, July 12, 1917.

1. **GENERAL ELECTIONS:** Printing Wrong Name On Ballot: Vote Void. Only the names of party nominees can be printed on the ballots used at a general election. If the name of some one who is not a party nominee is printed on the ballots, they cannot be counted for such person. The only method by which the voter can, on a party ticket, vote for any person other than the regularly nominated nominee of such party, is by erasing the printed name of such nominee and writing in the vacant space under his name the name of the person of his choice.

2. ———: ———: Writing in Name of Nominee Omitted. There is no provision in the law permitting the voter to write in the name of the party nominee which has been inadvertently omitted or misprinted. If the name of a person who is not the party nominee is printed on the ballot, the voter cannot erase that name and write in the vacant space under it the name of the nominee and then have his vote for that nominee counted. By statute the blank space is provided for the name of the voter's choice when that choice is some other person than the nominee.

3. ———: Voter Providing His Own Ballot. The voter cannot provide his own ballot at a general election. He can use only the ballot prepared by the county clerk and received from the judges of election.

4. Ballot Cast as Printed: Vote for Nominee. A party ballot, voted and cast as printed, must be counted as a vote for the party nominee for the office, even though his name is not printed upon it, but the name of some other person is. [BOND, WALKER and WOODSON, JJ., dissenting.]

5. ———: Counting Vote for Nominee Whose Name Was Not Printed on Ballot. Bradley was the Democratic nominee. There were 1311 ballots cast on which the name of Johnson, who was not the nominee of any party, was printed. These ballots were headed "Democratic Party," were prepared by the county clerk, and handed by the judges of election to the voters as they came to vote, and the names of the Democratic nominees for all other officers were printed thereon. The ballots were returned by the voters without erasing the printed name of Johnson and without writing in the name of Bradley or of any other person, and without any attempt to change them. The law required Bradley's name to be printed on the ballots and pro-

hibited the voters from writing his name thereon and from providing other ballots for themselves. *Held*, that the ballots must be counted for Bradley. This conclusion is enforced by the statutes themselves.

*Held*, by BOND, J., dissenting, with whom WALKER, J., concurs, that the votes actually cast for Johnson cannot be counted for Bradley by the courts after the election is over.

*Held* by WOODSON, J., dissenting, that conceding that all the voters who voted for Johnson thought they were voting for their party nominee, it does not follow that they thought they were voting for Bradley.

6. ———: Disfranchising Voters: Error of Official: Legal Fraud: Oral Evidence of Voter's Intention. The courts should not so construe the statutes as to permit the disfranchisement of large bodies of voters because of an error of a single officer in any case in which they are fairly susceptible of a construction that will prevent such a result. The statutes are fairly susceptible of the construction that a party ballot, voted and cast as printed, must be held conclusively to show the voter's intention to vote for the nominees of that party and that it must be counted, with respect to each office, for the party nominee therefor, regardless of what name appears in the particular space devoted to that office. And to reach that conclusion it is not necessary to resort to the oral testimony of what the voter's intention was.

*Held*, by GRAVES, C. J., concurring, with whom FARIS, J., concurs, that it is clear that the voters did not intend to vote for any person other than the party nominee, because they wrote no names in the blank spaces on their ballots; but the court is not in such case precluded from going to the voter's evidence as to his intention, and the decisions holding that the voter cannot by oral evidence impeach his ballot do not apply to such a case. *Held*, also, that the facts pleaded make out a case of legal fraud, in that they show that more than half the voters of the county have been disfranchised by the act of the county clerk in erroneously causing the name of a man to be printed on the party tickets as the nominee of the party for an office who was not the party nominee, and thereby legal assurance and a legal presumption were conveyed to the voters contrary to the fact and to uproot that fraud oral evidence is admissible, whether fraud is specifically charged or not.

*Held*, by BOND, J., and WOODSON, J., dissenting, that oral evidence taken after the election is over cannot be used to overthrow the voter's intention as manifested by his ballot.

7. ———: Vote Manifested by Ballot: Constitutional Requirement. The provision of the Constitution that all elections shall be by ballot does not preclude the counting of votes for the party nominee although on their face the ballots show they were cast for a man whose name

was unlawfully printed on them. That provision is intended principally to secure secrecy, and any manner of voting that shows the voter's choice and preserves secrecy is voting by ballot; and, besides, the votes were by ballot.

## Election Contest.

CONTESTANT AWARDED OFFICE.

*William C. Marshall, J. L. Fort, Ralph Wommack, A. L. Oliver, R. L. Ward, N. C. Whaley, W. H. Douglas, John T. Mackay* and *L. B. Hutchison* for contestant.

(1) The statute has given this court jurisdiction in this contest and, being a constitutional court, it possesses inherent power and by virtue of that power may do whatever right and justice requires in this case, whether specifically provided for in the statutes or not. R. S. 1909, sec. 5951, amended Laws 1911, p. 243; State ex rel. v. Ross, 161 Mo. App. 671. (2) Under the facts and pleadings in this cause it would have been legal and right to count the ballots cast in Maries County bearing the name of Arch A. Johnson as if he were the Democratic nominee, for this contestant, without proof from the voters by parol evidence as to what they intended. The law directed that contestant's name be placed on the ticket as the Democratic nominee and this statute (Section 5891) is mandatory. The law presumes that done which ought to be done. The well known and conceded facts and circumstances surrounding the election are all that should be necessary, as the voter has nothing to do with the printing of his ballot. He cannot be disfranchised by an error or fraud of the election officers. Fairchild v. Ward, Dig. of Contested Election Cases, H. of R. (Rowell), p. 559; Nance v. Kearbey, 251 Mo. 374; People ex rel. v. Malzacher, 110 Ill. 305; Behrensmeyer v. Kreitz, 135 Ill. 591; People v. Cook, 8 N. Y. 67; Bowers v. Smith, 111 Mo. 45; State v. Saxon, 12 So. (Fla.) 218; Miller v. Pennoyer, 31 Pac. (Ore.) 830; State v. Van Camp, 54 N. W. (Neb.) 113; San Luis Obispo v. Fitzgerald, 58 Pac. (Cal.) 699; Gumm v. Hubbard, 97 Mo.

311; People v. Czarnecki, 256 Ill. 327; People ex rel. v. Matteson, 17 Ill. 167; State ex rel. v. Elwood, 12 Wis. 551; Atkeson v. Lay, 115 Mo. 539; Wigmore's Aus. Ballot System, 190; McCrary on Elections (4 Ed.), p. 403; State ex rel. v. Eagen, 115 Wis. 417; Easterbrooks v. Atwood, 76 Atl. (Vt.) 109; State ex rel. Hirsh v. Wood, 148 N. Y. 142. (3) It is competent for the 1311 voters of Maries County who voted a ticket bearing the name of Arch A. Johnson to testify that they thought they were voting for and intended to vote for the regular Democratic nominee of their party. If this be not the law, then indeed would the door to fraud be wide open. The voters in Maries County who voted the Democratic ticket testified that they intended to vote for the Democratic nominee. This evidence is proper. It does not violate the rule of law that parol evidence is not admissible to contradict a written instrument. The distinction arises from the very nature of our election laws, for the written instrument (the ballot) is not prepared by the voter but by the public officials and the voter has the right to rely upon the fact that public officers do their duty. (a) Parol evidence may be admitted where there has been a fraud, either actual or constructive, perpetrated on the voters or on the candidate. People ex rel. v. Ferguson, 8 Cow. (N. Y.) 102; Freeman v. Lazarus, 61 Ark. 247; State ex rel. v. Pease, 147 S. W. (Tex.) 649; State ex rel. v. Elwood, 12 Wis. 551; State ex rel. v. Meilike, 92 Wis. 607; State ex rel. v. Luy, 103 Wis. 528; State ex rel. v. Eagan, 115 Wis. 420; Hirsh v. Wood, 148 N. Y. 142. (b) A ballot that is ambiguous on its face may be explained by parol evidence. Gumm v. Hubbard, 97 Mo. 311; McCrary on Elections (4 Ed.), 403; People v. Saxon, 22 N. Y. 311; People ex rel. v. Malzacher, 110 Ill. 305; People v. Ferguson, 8 Cow. (N. Y.) 102; Norton v. County Court, 91 S. E. (W. Va.) 258. (c) Ballots should be liberally construed and the construction should be in favor of a reading which will render the ballot effective rather than some conclusion which will on technical grounds render it ineffective. Abshier v. Aiken, 191 S. W. (Tex.) 770; Behrensmeyer v. Kreitz, 135 Ill. 495;

Bowers v. Smith, 111 Mo. 57; Owens v. State ex rel., 64 Tex. 509; State ex rel. v. Saxon, 12 So. (Fla.) 218. (d) The statute takes out of the voter's province the preparation of the ballot, and the State undertakes to do this for him. If the ballot is not prepared in the manner prescribed by the mandatory statutes of the State, then the voter has a right to contradict it. Freeman v. Lazarus, 61 Ark. 247; Williams v. Buchannon, 86 Ark. 270; Peabody v. Burch, 89 Pac. (Kan.) 1016; Patton v. Coates, 41 Ark. 111; People v. Clark, 8 N. Y. 67. (e) A ballot is to be construed in the same way as any other written or printed document and the construction must be such to give effect to the voter's intention if that can be ascertained from the face of the ballot, or in cases where there has been a fraud perpetrated on the candidate or the voters or that which amounts to a fraud, and which fraud or that which amounts to a fraud changed the result of the election, then evidence *aliunde* the ballot may be heard. McCrary on Elections (4 Ed.), p. 403; People v. Cook, 8 N. Y. 67; In re Foy's Election, 76 Atl. (Pa.) 713. (f) It is a matter of common knowledge that does not require proof that electors more often vote for a candidate because of the party he represents than for reasons personal to the voter. Therefore, it is competent to prove by the voter what he intended when he cast a ballot under the circumstances of this case. In re Foy's Election, 76 Atl. (Pa.) 715; Norton v. County Court, 91 S. E. (W. Va.) 258; Clark v. Commissioners, 33 Kan. 202.

*Barbour & McDavid, Morton Jourdan, W. J. Orr, Howard Gray, J. W. Halliburton, Lewis Luster, Sam Wear* and *Pope & Terrill* for contestee.

(1) The right to contest an election did not exist at common law and is not an inherent right, but the right exists only by reason of the provisions of the Constitution and statutes of the State. The Constitution provides that the ''General Assembly shall by general law designate the court and regulate the manner of the trial and all matters incident thereto,'' and therefore, the pow-

ers exercised by the court must be derived from the statute and the court has no inherent power to do anything in relation to this matter that is not provided for by the statute. Constitution, art. 8, sec. 9; Kehr v. Columbia, 136 Mo. App. 328; Bradbury v. Wightman, 232 Mo. 392; Nance v. Kerbey, 251 Mo. 387; State v. Gamma, 149 Mo. App. 702; State ex rel. v. Slover, 134 Mo. 15; State ex rel. v. Spencer, 166 Mo. 285; State ex rel. v. Hough, 193 Mo. 643. (2) The Constitution and statutes provide that all elections *shall be by ballot,* which plainly means that no candidate or person can be voted for unless the name of such candidate or person is printed or written on the voted ballot; and hence, it must necessarily follow that no vote can be cast or counted for any candidate or person whose name does not appear on the ballot cast by the voter. Constitution, art. 8, sec. 3; Secs. 5805, 5890 and 5891, R. S. 1909; Sec. 5900, Laws 1913, p. 328. (3) The statute provides that it shall be the duty of the county clerk to provide printed ballots for the election and to cause to be printed on the appropriate ballot the name of every candidate whose name has been certified to him. Ballots other than those printed by the county clerk according to the provisions of this article shall not be cast or counted in any election. Sec. 5890, R. S. 1909. The statute further provides that every ballot printed under the provisions of this article shall contain the names of every candidate whose nomination for any office specified in the ballot has been properly certified, and no other names. Sec. 5891, R. S. 1909; Laws 1913, p. 327. (4) John H. Bradley was the Democratic nominee for Judge of the Springfield Court of Appeals. The name of Arch A. Johnson, who was a candidate for nomination at the primaries, was printed on the official ballot as the Democratic nominee for that office, and the name of John H. Bradley was omitted therefrom. The statute expressly provides that such ballot shall not be cast and shall not be counted in any election, which means that the ballots in question cannot be counted either for Johnson or for Bradley. They cannot be counted at all, except those on which Johnson's name was written must

be counted for him. Sec. 5890, R. S. 1909; Rollins v. McKinney, 157 Mo. 664; Ledbetter v. Hall, 62 Mo. 422; West v. Ross, 53 Mo. 350; Donnell v. Lee, 101 Mo. App. 191, approved 244 Mo. 327; Rollins v. McKinney, 157 Mo. 664. (5) No one can print a ballot for use at the polls but the county clerk and no ballot can be counted 'for any candidate unless his name is printed thereon by the county clerk or by his direction or unless such candidate's name is written on the ballot by the voter. There is no other way by which the name of a candidate can be legally placed on a ballot and if his name is not on the ballot, it cannot be counted for him. Sec. 5890, R. S. 1909; McCrary on Elections (4 Ed.), sec. 225; Rollins v. McKinney, 157 Mo. 664; Nance v. Kerbey, 251 Mo. 383; Gass v. Evans, 244 Mo. 353; Saunders v. Lacks, 142 Mo. 263; Hehl v. Guion, 155 Mo. 82; Ledbetter v. Hall, 62 Mo. 422; West v. Ross, 53 Mo. 350; State ex rel. v. Cook, 41 Mo. 594; Lankfort v. Gebhart, 130 Mo. 629; Turpin v. Powers, 192 S. W. (Mo.) 986. (6) The ballot as cast by an elector for a particular person, when the ballot is plain and unambiguous, must be held to express the intention of the voter to vote for that person and a different, secret or mental intention on his part cannot be shown by parol testimony. The ballot itself, in the case at bar being plain and unambiguous, proclaims and legally determines the voter's expressed intention to vote for Arch A. Johnson, if he did so vote, and such voter cannot now vary or contradict such ballot by testifying that he intended to vote for John H. Bradley whose name did not appear on the ballot cast. It is not the hidden or secret intention in the mind of the voter with which the court deals. The court in determining and enforcing the law, can and does only deal with the legally expressed intention of the voter. The intent must be found in the ballot itself. Effect cannot be given to an intention not therein expressed. The question is, not what the voter meant as distinguished from what his ballot plainly expresses, but simply for whom did he vote as expressed by his plain and unambiguous ballot. Therefore, the testimony of all the contestant's witnesses that they intend-

ed to vote for contestant, or for the Democratic nominee, is wholly incompetent and inadmissible.    McCrary on Elections (4 Ed.), secs. 528-530 and 542; Wigmore on Evidence, sec. 2421, p. 3405; Cooley's Constitutional Limitations (7 Ed.), pp. 914-920; Ott v. Brissette, 100 N. W. (Mich.) 906; State v. Reynolds, 61 Ind. 422; State v. Steinborn, 66 N. W. (Wis.) 798; People v. Seaman, 5 Denio (N. Y.), 409; People v. Saxton, 22 N. Y. 309; Coughlin v. McElroy, 43 Atl. (Conn.) 857; People v. McNeal, 63 Mich. 297; Maddux v. Walthal, 74 Pac. (Cal.) 1026; Anderson v. Winfree, 4 S. W. (Ky.) 353; Beardstown v. Virginia, 76 Ill. 43; State v. Eagan, 91 N. W. (Wis.) 984; Wimmer v. Eaton, 34 N. W. (Iowa) 170.

BLAIR, J.—This is an election contest.    The office involved is that of Judge of the Springfield Court of Appeals.    Contestee has been declared elected and has been commissioned.    In the primaries held August 1, 1916, contestant and contestee were regularly nominated by the Democratic and Republican parties, respectively. There are forty-four counties in the Springfield Court of Appeals District.    The only questions raised in this proceeding grow out of happenings in Maries County.    In the forty-three counties, other than Maries, contestant received 86928 votes and contestee received 87271 votes. In Maries County contestee received 721 votes, making his total 87992.    One vote cast in Maries County is conceded to contestant, making his uncontested total 86929. One thousand three hundred and eleven other votes for Judge of the Springfield Court of Appeals were cast in Maries County, and the principal question is whether these votes should be counted for contestant.    Contestant's name, as the name of the regularly nominated Democratic candidate for the office in question, was duly certified by the Secretary of State to the county clerk of Maries County.    Two newspapers, the Maries County Gazette and the Belle Times, were designated as the papers to publish the lists of nominations for the various offices to be filled at the 1916 general election    The list as published in the latter was correct.    In the former

the published list contained the name of Arch A. Johnson, instead of that of contestant, as the Democratic nominee for the Springfield Court of Appeals. A third paper, the Home Advertiser, a paper of general circulation in Maries County, published at Vienna, the county seat, published the correct list of all nominations. The Gazette printed the official ballots for the county and in these printed the name of Arch A. Johnson, instead of that of contestant, as the Democratic candidate for the Springfield Court of Appeals. The error was not discovered until several days after the election. These ballots were the ones used in Maries County and were otherwise correct. They were, on election day, handed out to the voters as the Democratic ballots for that election and were used by the voters who voted the Democratic ticket in that election.

In his notice of contest, contestant asked that a commissioner be appointed. Hon. H. E. Alexander of Cape Girardeau was appointed and took the testimony of many witnesses. The net result of this was evidence that practically all the 1311 voters who cast the ballots in question intended to vote and believed they were voting for the Democratic nominee for Judge of the Springfield Court of Appeals. Our commissioner so finds from the evidence. He concluded that the 1311 ballots should be counted for contestant.

Among other things, the parties hereto stipulated the following:

"Tenth. That the name of Arch A. Johnson was printed on the Democratic ticket in Maries County as if he were the Democratic nominee for Judge of the Springfield Court of Appeals, and that all of the Democratic tickets used at the various precincts, and at all the precincts in Maries County, at the general election on November 7, 1916, contained the name of Arch A. Johnson printed thereon as if he were such nominee . . . .

"Thirteenth. That there were 1311 ballots cast in Maries County at the general election on November 7, 1916, bearing the name of Arch A. Johnson thereon and cast with said Johnson's name thereon as if he were the

Democratic nominee for Judge of the Springfield Court of Appeals.

"Fifteenth. That there were 111 ballots cast in Maries County at the general election on November 7, 1916, bearing the name of Arch A. Johnson as if he were the Democratic nominee for Judge of the Springfield Court of Appeals by legally qualified voters, whose evidence has not been taken, and who have not been stipulated upon."

Contestee's answer contains the following:

"Contestee admits and avers that by some mistake or inadvertence, unknown to contestee, the name of Arch A. Johnson as a candidate for Judge of the Springfield Court of Appeals was printed on the Democratic ballots that were provided for the use of voters in said Maries County and that said ballots were used by said voters and that there were cast for said office in said Maries County at said election for contestant one vote, for contestee seven hundred and twenty-one votes, and for Arch A. Johnson thirteen hundred eleven votes."

On the argument it was further stipulated that the persons casting the 1311 votes counted for Arch A. Johnson, voted the regular Democratic ticket.

Under section 5855, Revised Statutes 1909, all nominations for elective offices, with certain exceptions with which we are not concerned in this case, must be made by primary election held under article 4, chapter 43, Revised Statutes 1909. Section 5877 provides that the party primary nominees for offices shall be the candidates of that party for such offices and their names as such candidates shall be placed on the official ballot at the following election. Section 5878 requires the Secretary of State to certify and publish the primary results as to state and district offices, and to certify to the chairman of each party's state committee so much of the certificate as relates to the nominees of the party of whose committee such chairman is the head. Section 5879 requires the Secretary of State to certify to the county clerk of each county the nominees for each state and district office for which the voters of the county are entitled to vote.

By section 5889 it is provided that all ballots cast in elections for public officers in this State must be printed at public expense. Section 5890 makes it the duty of the county clerk of each county to provide printed ballots for every election for public officers in which the electors of his county are entitled to participate, and requires such clerk "to cause to be printed in the appropriate ballot the name of every candidate whose name has been certified to or filed with him in the manner provided for in this article." It further provides that "ballots other than those printed by the respective clerks of the county courts according to the provisions of this article shall not be cast or counted in any election." By section 5891 it is provided that "every ballot printed under the provisions of this article shall be headed by the name of the political party by whom the candidates whose names appear on the ballots were nominated and each of said ballots shall contain only the names of the candidates nominated by said party. Underneath the name of each candidate shall be left a blank space large enough to contain a written name." By section 5895 it is required that all the ballots and lists of nominations for office shall be printed and published, respectively, "under the direction and with the consent and approval of the county court of the county in which any such election is to be held." Section 5896 provides that when "it shall appear by affidavit that an error or omission has occurred in the publication of the names or description of candidates nominated for office, or in the printing of the ballots" certain courts or judges "may upon application by any elector, by order, require the clerk of the county court to correct such error, or to show cause why such error should not be corrected." Under section 5899 each voter is entitled to receive from the judges of election one ballot "of each political party voted for at said election," and it is made the "duty of such judges of election to deliver such ballots to the elector," the judges first writing their initials upon the back of the ballots. Section 5900 provides that the voter, upon receiving the ballot, shall immediately retire to one of the booths in the polling place and that

"he shall prepare his ballot by selecting the ballot he desires to vote. He shall erase or strike out the name of any candidate he does not wish to vote for and write the name of his choice underneath."

Section 5851 requires the county clerk, prior to the election, to publish "the nominations to office certified to him by the Secretary of State and also those filed in his office." The lists so published are required by section 5852 to be arranged in the order and form in which they will be printed upon the ballot.

Contestant was the regular nominee of his party. The law required his name to be printed upon the party ballot as the party nominee and candidate. Instead, through mistake, the name of Arch A. Johnson was printed thereon as such nominee and candidate. The party ballots bearing Johnson's name so printed were delivered by the judges to the voters, and, it is stipulated, 1311 such ballots were cast in Maries County at the general election on November 7, 1916, bearing the name of Arch A. Johnson thereon and *cast with said Johnson's name thereon* as if he were the Democratic nominee for Judge of the Springfield Court of Appeals. It is further stipulated these ballots were cast by persons who voted the regular Democratic ticket. The answer avers that 1311 of these ballots with Arch A. Johnson's name printed thereon as candidate for Judge of the Springfield Court of Appeals were cast by the voters of Maries County, and avers that Johnson received 1311 such votes. The stipulation and this averment mean that 1311 voters who selected the Democratic ballot as the one they desired to vote cast such ballots with the name of Arch A. Johnson printed thereon in the space set aside for the name of the Democratic nominee for the Springfield Court of Appeals, and that these ballots, when cast, bore in that space the printed name of Arch A. Johnson, and that no other name was printed or written in such space. The averment that Johnson "received" 1311 votes, coupled with the stipulations, makes this clear beyond doubt.

It is obvious the ballots cannot be counted for Johnson. The law requires the names of party nominees,

271 Mo.—29

only, to be printed on the ballots. If the names of others are printed thereon, the ballots, nevertheless, cannot be counted for such others. Even had Johnson been the nominee of some other party or of a group of electors, these ballots could not have been counted for him. [Atkeson v. Lay, 115 Mo. 538.] The only method whereby the voters can, on a party ticket, vote for any person other than the nominee of such party, is by erasing the name of the nominee; i. e., the regularly nominated candidate, and writing "the name of his choice underneath." [Sec. 5900, R. S. 1909.] Nor is there any provision of law permitting the voter to write in the name of a nominee which has been inadvertently omitted or misprinted. The blank space is provided for the name of the voter's "choice" when that "choice" is some person *other than the nominee*. This is the specific meaning of the statute. Neither can the voter himself provide a correctly printed ballot. He must receive from the judges and must use in voting the ballot prepared by the county clerk. The statute prohibits the casting or counting of any other. In such circumstances and under these statutory provisions, the voters of Maries County went to the polls. Each of the more than two thousand voters of that county was handed, among others, the official ballot prepared by the clerk, headed "Democratic Ticket," and required by the law to contain the names of every Democratic nominee, including that of contestant. One thousand three hundred and eleven of those voters desiring to vote the Democratic ticket returned the official Democratic ballot to the judges of election without erasing the printed name appearing on the ballot as that of the Democratic candidate for the Springfield Court of Appeals, and without writing in the name of any other person as their choice for that office. Without attempting to change it, these voters cast the printed official ballot, properly headed as the ballot of the Democratic party. They selected it as the particular party ballot they desired to vote. They knew the law required that ballot, as given them by the judges, to contain the names of every one of the numerous Democratic nominees for of-

fice, including that of the nominee for the Court of Appeals. Knowing this, each delivered the ballot to the judges in the form in which it was officially printed and in which he received it from the election officials, so far, at least, as concerns the office in question. The State had taken out of the hands of these voters the preparation of these ballots. It had prohibited them from using any ballots except those it furnished. It furnished them ballots which lawfully could contain no names other than those of the regular nominees. By so delivering them these ballots it, in effect, said to them "this printed ballot, headed with the name of the Democrat party, contains the names, under proper headings, of the Democratic nominees. You must use this ballot if you desire to vote the Democratic ticket. You can use no other. If, for some office, you wish to vote for some person other than a nominee, you must erase the name of the nominee, printed on the ballot, and write in such other person's name." In effect, therefore, the act of delivering of such ballot also meant that if the voter desired to vote for all Democratic nominees, all that was necessary for him to do was to re-deliver the Democratic ticket to the receiving judges.

In such circumstances and under such statutory provisions we are of opinion that a party ballot, voted and cast as printed, must be held conclusively to show the the voter's intent to vote for the nominee of that party and that it must be counted, with respect to each office, for the party nominee therefor regardless of what name appears in the particular space devoted to that office. In this case the agreed facts and statutes are sufficient without any consideration of the oral evidence offered.

There are no precedents. No similar case has heretofore engaged the attention of any court so far as industry of counsel or our own investigation has disclosed. This court is, however, committed, as are all courts, to the principle that the disfranchisement of voters is not favored. We will not give to any law such a construction "as would permit the disfranchisement of large bodies of voters because of an error of a single official" in any

case in which the law in question "is fairly susceptible of any other." [Bowers v. Smith, 111 Mo. l. c. 55.] In this case the law is not only fairly susceptible of the construction we have given it, but no other construction seems reasonable in view of all the provisions of the statutes.

Something is said concerning the result and effect of the holding that the 1311 votes in question shall be counted for contestant. Perhaps there is no impropriety in pointing out the effect of a contrary holding. The first result of such a holding would be to disfranchise the voters of one party in an entire county. The second result would be the establishment of a precedent whereby error might disfranchise the entire State and behind which, possibly, fraud might intrench itself and intentionally defeat the will of the voters of the State. Under such a ruling it is within possibilities that error or fraud in printing the ballots in Missouri might result in changing the result even in a national election. That the Legislature intended to leave open the way for such wholesale defeat of the popular will is not a conclusion we are willing to announce unless there is no other reasonable construction to be given the statutes.

It is suggested the Constitution provides all elections shall be by ballot and that this precludes counting the votes for contestant. This constitutional provision is intended principally to secure secrecy. [Ex Parte Arnold, 128 Mo. 260.] It does not prohibit the Legislature from providing methods of voting in which names of regular nominees need not appear at all upon the ticket. The real requisites are that the ballot shall preserve secrecy and show the voter's choice. [In re Mathiason Mfg. Co., 122 Mo. App. l. c. 444.] Any manner of voting which shows the voter's choice and preserves secrecy is "voting by ballot." Within the constitutional provision voting machines meet a constitutional requirement such as ours. [Lynch v. Malley, 215 Ill. l. c. 580; U. S. Standard Voting Machine Co. v. Hobson, 132 Iowa, 38; City of Detroit v. Election Inspectors, 139 Mich. 548, and cases cited; Elwell v. Comstock, 99 Minn. 261.] In this

State the ticket required to be printed is headed by the party name and required to contain the printed names of nominees with spaces left for writing in names of persons other than nominees. The view that under our statutes the delivery of such an official ticket to the judges of election is a vote for the regular nominees of the party whose name heads the ticket does not, it is apparent, cause the statutes to offend against the constitutional provision. The vote was by ballot. The construction of the effect of the ballot as cast is that which concerns us in this case.

The statutory provision that ballots other than those the county clerk prepares and causes to be printed shall not be cast or counted means, simply, that no ballot shall be cast or counted except those officially prepared. It does not mean if any error occurs in printing such ballot the ballot shall be thrown out.

It is also urged that the statute provides a method for correcting errors in printed ballots and that this is preclusive. This question is not involved in this case. Our construction of the ballot cast is such that, as cast, it must be counted for contestant; that as cast it shows an intent to vote for the nominee, i. e. contestant. In such circumstances, whether the ballot might, under the statute, have been corrected at the instance of contestant or any elector of Maries County is not an inquiry necessary to be made. If the official ballot means what we hold it means, then no correction was necessary to require these 1311 ballots to be counted for contestant and to prevent the disfranchisement of the 1311 voters of Maries County who cast those ballots. The cases cited on this point decide nothing out of harmony with this conclusion.

It results that the 1311 ballots in question must be added to the 86929 conceded to have been correctly counted for contestant. This makes his total vote 88240, giving him a majority of 248 and entitling him to the office. It is ordered, therefore, that contestee be ousted from the office of Judge of the Springfield Court of Appeals and that John H. Bradley, contestant herein, be installed in said office as judge of said court for the full term for

which he was a candidate at the general election in November, 1916.

*Williams, J.,* concurs; *Graves, J.,* concurs in a separate opinion in which *Faris, J.,* concurs; *Bond, J.,* dissents in separate opinion in which *Walker, J.,* concurs. *Woodson, J.,* dissents in separate opinion.

GRAVES, C. J. (concurring)—I. I concur in all that is said by my learned brother writing for the majority. I agree with him that under the statutes of this State the 1311 votes in dispute can not be counted for Johnson. This, because his name does not get upon the voters' ballot in either one of the two ways by which the law authorizes its presence upon the ballot. To be specific, before his name can be printed upon the ballot, he must have been 'the Democratic nominee for the office. He was not such nominee. No authority in law for his name there in print, can be found. The only way it could have legally gotten on the ticket of any vot-

Oral Evidence of Voter's Intention.

er, was by the voter writing it in the space left under the caption and under the name of the nominee. The admissions show that this did not happen. So we also agree to the ruling that under the admissions in the pleadings and otherwise, it is not necessary to go to the oral evidence from the voters' to determine the intent of the voters. But whilst I so agree, I do not want to be understood as agreeing to contestee's contention that this court is precluded from going to the voter's evidence as to his intentions under the facts of this case. I know that it has been ruled that the voter, by oral evidence, can not impeach his ballot, but no such ruling has ever been made in a case having the facts of this record. I maintain that under the facts of this record evidence of the voter as to his intent was competent, and after a slight mention of another suggestion in the case, I shall present my views upon the competency of the oral evidence of the voter as to his intent in casting these ballots.

II. Suggestion has been made, and whether it came from court or counsel is immaterial, to the effect that the whole election might be declared void. To my mind there is no substance in this view of the case. In the first place the pleadings in this (an original proceeding) would not authorize such a judgment, if in fact and law, this court could enter such a judgment.

*Void Election.*

This is a contested election case. All such cases proceed upon the theory that there has been a valid election, but that, by reason of some happenings in the course of a valid election, things have occurred by which the contestant has been deprived of votes to which he was entitled, or contestee has been given votes to which he was not entitled. A contested election case is brought upon the theory that someone has been legally elected, not on the theory that there has been no election at all. In fact, the contestant must aver that he was legally elected at the election in question, and therefore, by his petition, admits that a legally authorized election has been held. His only contention is, that by reason of alleged irregularities and wrongful acts in the course of a duly authorized election, he has not been given the office for which he ran, and to which he would be entitled if these irregularities and wrongful acts had not occurred. The pleadings govern the judgment which may be entered, in this an original proceeding or contest, and these pleadings will not authorize a judgment to the effect that there was no valid election and therefore no person was elected to the office. Such a judgment would be beyond the scope of the pleadings. Only by consent of the parties can a new election be ordered. [R. S. 1909, sec. 5930.] We have no such consent here. In this case these 1311 votes were either rightfully or wrongfully counted for Johnson, and the majority opinion is correct in saying that, under the provisions of our statutes, they were wrongfully counted for Johnson. If this be true, then they should either be counted for Bradley, the Democratic nominee, or not counted at all. If counted for Brad-

*Pleadings and Judgment.*

ley, he is elected. If not counted at all, Cox is elected. This is the simple issue, and I fully agree with the view expressed in the majority opinion to the effect that these votes must be counted for Bradley. But as said we want to give our views upon the competency of this oral evidence and to that question we proceed next.

III. To my mind, under our statutes, when the voter selects from the several ballots handed to him by the judges of election the ballot headed "Democratic Ticket," and deposits that ballot, unscratched as to a given office, and returns unvoted the several other ballots given by the judges, there is a presumption that such voter intended to vote for the Democratic nominee, and said presumption continues until overthrown by evidence contra. In this case there is no evidence contra.

Presumption.

In addition to this, it is clear that such voters in the instant case did not intend to vote for Cox, because they returned unvoted the ticket with that name upon it. And it is also clear that such voter did not intend to vote for a person other than the Democratic nominee, because they wrote no name in the blank space upon their ballots. This, however, goes to the case without considering the evidence of the voters, and is aside upon that question.

A petition must be characterized by the nature of the things charged therein. The instant petition does not specifically charge fraud, but the facts stated therein make out a case of the rankest legal fraud. In the disposition of a case it makes no difference whether the facts pleaded make a case of actual fraud, or one of legal fraud. Fraud of either kind is sufficient. Thus in Gantt v. Brown, 238 Mo. l. c. 567, this court said:

Fraud.

"In this case the contestants charge fraud in the election—both actual fraud and what might be denominated legal fraud. The classification is immaterial, in cases of the character under consideration, because fraud is fraud, whether it be actual or legal."

In the same case (238 Mo. l. c. 568) we further said:

"We hold further that when charges of fraud are made as above indicated the mode and measure of proof

should be as broad as the charges. The best evidence should be available in the search for fraud, or in disproving the charges of fraud.''

The conceded facts in this case work a legal fraud, both on the contestant, Bradley, and the 1311 voters of Maries County, who thought they were voting for Bradley, when they cast their ballots, unless these voters and Mr. Bradley are protected by the presumption we have suggested, or are protected by the proof of how these voters intended to vote. We concede if no fraud (actual or legal) is shown, that the voters should not be permitted to contradict the face of his ballot, but this is not this case. If it is to be contended that our cases holding that a voter shall not be permitted to contradict his ballot, by stating for whom he intended to vote, shall control here, under the facts of this case, then I say it is time to write anew the law. Fortunately those cases held in judgment no such facts as are in this record. Nor was the rule announced in them intended to apply to a situation, where more than half of the county's voters have been disfranchised by a legal fraud. In the commonest cases the evidence takes a broad range upon questions of fraud, and no reason can be assigned as to why it should not take that range in a case affecting the very vitals of republican government. If fraud, either actual or legal, can thwart the intent and will of the voters, elections should be abandoned. The legal effect of saying that the intent of the voter cannot be shown, in this case, is to say, that although it were shown in this case that the contestee had unlawfully paid the clerk and the printer money to put out the Democratic ballots, in Maries County, with the name of Johnson, instead of Bradley, thereon, the voter would be precluded from giving evidence as to his intent to vote for Bradley. The latter would be actual fraud, the record before us is legal fraud, and the result the same in each. In cases of fraud proof *aliunde* the ballots has been admitted, and admitted for the reason that to refuse to admit it would be to countenance fraud. Thus in Freeman v. Lazarus, 61 Ark. 247, the question was up as to the validity of an election on licen-

sing or not licensing the sale of liquors. Actual fraud was charged. It was claimed that a number of voters intended to vote to license the sale of liquor, whilst their ballots showed their vote contra. It was charged and shown that one of the judges of election was against the licensing of such sales, and distributed tracts against it; that he solicited voters to let him make out their ballots; that he did make out many such votes, and they were "against license" although it was further shown that some of the voters so marked as "against license" on their ballots had directed him to make the ballots the other way. Under these charges of fraudulent conduct upon the part of the election official, the court *nisi* permitted the voter to testify how they intended to vote, and the Supreme Court sustained the lower court. The reason assigned was that the election officials had perpetrated a fraud upon the voter. In the instant case we have present the same thing. The preparation of the ballot (with only the names of nominees thereon) is left by the law to officials, and the legal fraud in this case is as great as the actual fraud in the Arkansas case supra. The ballots were handed to the voters with the legal assurance from the state officials in charge of the election that they contained the names of the Democratic nominees, including contestant Bradley. To uproot this fraud, evidence *aliunde* is admissible. To hold contrary would be to seal the lips of the best evidence in a case of fraud (and there is no distinction between actual and legal fraud) and permit such monster (in the very fields of justice) to run at large, uncurbed and unchecked. So whilst we have said (absent the charge of fraud) that the voter may not contradict his ballot, yet this is far from saying that we will not hear the voice of the voter as to his intent, when it is charged that his intended vote was changed by reason of fraud, either actual or legal.

Recognizing the rule (absent the charge of fraud, actual or legal) to the effect that a voter, by parol evidence may not contradict his ballot, yet such rule has no place in this case. Every fact charged in the petition at bar charges a legal fraud. The facts pleaded make a case of

legal fraud. In cases of fraud the evidence takes a broad latitude, and to weed out fraud the courts admit the best evidence of which the case is susceptible. I am therefore firmly fixed in the view, that to avoid the conceded fraud upon these 1311 voters of Maries County, and the conceded fraud upon contestant Bradley, the oral evidence of the voters as to their intent in casting the ballots was competent, even though in this case it is but cumulative. For these additional reasons, as well as for the reasons expressed in the majority opinion, I concur in the majority opinion. *Faris, J.,* concurs in these views.

BOND, J. (dissenting)—I dissent from the majority opinion. I cannot agree that the votes lawfully cast at a lawful election for one man may be counted for another, after the election, by the courts.

If that rule is approved, then election to office in this country does not depend upon the action of the voters in casting their ballots at the time of the holding of a lawful election, but depends upon investigation after the election, whether certain voters would have voted for the contestant, if they had known that he had been nominated by a particular political party whose general ticket was used by them in preparing their ballots. To support this theory evidence would have to be taken *after* the election was over, as to what the respective voters *would* have done under circumstances *not* present at the election. This was done in this case, and upon the results of that inquiry the contestant now asks that votes which were actually cast against him should be counted for him. In effect, that another election should now be held through the medium of testimony given in a contest suit, whereat, after a recanvass of the votes based upon an assumption of what the voters *might* have done, this court should adjudge a man to be elected to an office for which he was defeated by the plurality of the ballots actually cast at a regular election for the filling of that office.

To my mind such a contention is the height of unreason. Confessedly it is one to which no court has as yet lent its countenance. If it should now receive judicial

sanction, the result would necessarily follow that any lawful election, held in strict conformity to law and free from any imputation of fraud or unfairness, would constitute only a conditional choice, subject to be changed as to the persons chosen by the ballots cast at the election, by the subsequent testimony of the voters that, through their own negligence or lack of knowledge, they actually voted for a man for whom they would not have voted, if they had been fully informed as to the candidacy of another at the time when ballots were cast. Such a contention is not only irrational, but, if sustained, would open the flood-gates for fraud in the matter of elections to office. I cannot assent to the right of this court to install a man into an office for which he was defeated at the polls. Courts are not "electoral commissions" and have no power to substitute their appointee for the person elected by the votes of the people.

II. The construction sought to be forced by the majority opinion upon the statutes referring to party ballots, would obviously *defeat the voters' freedom* of choice, and in other vital respects would violate the fundamental principles of all free elections.

III. As to the question of the acceptance of the office by the contestee under the circumstances, that is a matter left to his personal judgment, with which this court has nothing to do, in the absence of any showing of invalidity of the ballots cast in his favor or fraud in the election. The sole question for this court to determine is the fact of the election or non-election of the person now seeking the office through this contest. There being no doubt that he did not receive a plurality of the lawful ballots cast at a lawful and closed election, his petition should be dismissed.

For these reasons I record my protest to the ruling in the majority opinion. *Walker, J.,* concurs in these views.

WOODSON, J. (dissenting)—While I agree with most of what is said in the majority opinion, yet I dis-

sent from the legal conclusions drawn from some of the observations of my learned associates, and I dissent from the result the opinion reaches.

Conceding that all of the electors who voted for Judge Johnson thought and believed they were voting for the Democratic nominee, yet it by no means follows, as a necessary sequence, that all of them believed they were voting for Judge Bradley.

It must be conceded that even Democrats might scratch a nominee of their party and vote for some other Democrat for that office; in fact, that is often done; and the Legislature so recognizing the fact, has provided by statute that in making out the official ballots, a blank space shall be left thereon after the name of each nominee in order that the electors, if they deem proper, may scratch a nominee and write therein the name of some other person, and thereby vote for such other person for said office.

Moreover, this record shows, as a matter of fact, that the thirteen hundred and eleven votes cast for Judge Johnson were not in fact cast for Judge Bradley, and we might very well assume that some of them who voted for Judge Johnson would not have voted for Judge Bradley, even though they were Democrats. In other words it frequently occurs that some one or more of the nominees may not poll his or their party's full strength. The history of this State is full of instances where one or more nominees of a party have been defeated at the polls, while the rest of the ticket has been elected. This occurs in one of three ways: First, by some of the electors not voting for the nominee of their party; second, by voting for the nominee of some other party; or, third, by voting for an independent candidate. I mention this for the purpose of showing that a nomination by the dominant party of a county, district or state is not equivalent to an election; if that were true, then what would be the use of holding the election? So the point is: it does not necessarily follow that because Judge Bradley was the Democratic nominee of his party for Judge of the

Springfield Court of Appeals, he was therefore necessarily elected to that office because of the error of the county clerk in omitting his name from the ticket and printing the name of Judge Johnson in lieu thereof; for some of them might not have voted for him had his name been on the ticket; and how many, no one can tell, and we have no right to make a guess upon that question.

The doctrine announced in this case opens wide the door to fraud and corruption in elections; it authorizes the elector, after he has cast his vote, to testify for whom he voted, and thereby perhaps change his vote, a most dangerous rule; also under this rule a nominee who is unpopular in a city or county might fraudulently and not by mistake, as was done in this case, have substituted on the ballot the name of some other person instead of his own, who was popular and strong, and let the electors vote for him, and then count the ballots for the nominee.

I therefore dissent.

When writing this dissent I was laboring under the impression that the oral testimony mentioned in the majority opinion constituted a part of the concrete case stated; but upon my attention having been specially called thereto I find I was in error; but since Brother Graves in his concurring opinion considers such evidence admissible I will not change the dissent.

Believing there was no valid election held, I therefore dissent.